Robert L. HASHA, Jim McDonald, Marlene Ray, Andre Miller, J.D. Gosnell, and Bradley L. Lewis, Individually and on Behalf of All Other Persons Similarly Situated *v.* CITY OF FAYETTEVILLE, Arkansas and Arvest Trust Company, National Association

92-578 845 S.W.2d 500

Supreme Court of Arkansas
Opinion delivered January 19, 1993
[Supplemental Opinion on Denial of Rehearing March 9, 1993*]

*Hays and Glaze, JJ., dissent.

*Lisle Law Firm*, for appellant.

*Friday, Eldredge & Clark*, by: *Larry W. Burks*, and *Jeffrey H. Moore*, for appellee Arvest Trust Co., N.A.

*Jerry E. Rose*, City Att'y, for appellee City of Fayetteville.

ROBERT H. DUDLEY, Justice. This is a illegal exaction suit. The taxpayers allege that a primary purpose of the tax has failed and that an injunction should be issued against its continued collection. The chancellor denied relief. We hold that the tax constitutes an illegal exaction and reverse and remand with instructions.

The constitutional provisions and statutes that are applicable to this case are as follows. Article 12, section 3 of the Constitution of Arkansas, in the material part, provides: "The General Assembly shall provide, by general laws, for the organization of cities . . . and restrict their power of taxation . . . so as to prevent the abuse of such power." Article 12, section 4 begins: "No municipal corporation shall be authorized to pass any law contrary to the general laws of the state. . . ." A basic premise, to which we have long adhered, is that a municipal corporation has no inherent power to levy taxes, but can levy only such taxes as are authorized by law. *Vance* v. *City of Little Rock*, 30 Ark. 435 (1875). Article 16, section 11, in pertinent part, provides: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same. . . ."

Act 25 of 1981, extraordinary session, authorized cities to adopt a local sales and use tax upon approval by the voters. The act provides that the tax can be abolished either by vote of the city council or by vote of the qualified voters of the city acting in accordance with the initiative procedures of Amendment 7. 1981 Ark. Acts 25 § 2(f). The emergency clause of the act provided that the tax was for city "services." This tax was

referred to as the cities' "operating penny" tax since it could be "used by the city for any purpose for which the city's general funds may be used." *Id.* § 7. Section 2(d) of the act provided that the voters of the city must approve or reject the tax and that:

> The ballot title to be used at such election shall be substantially in the following form:
>
> "FOR adoption of one percent (1%) local sales and use tax within (name of city)."
>
> "AGAINST adoption of a one percent (1%) local sales and use tax within (name of city)."

■ Act 25 of 1981, summarized above, was amended by Act 726 of 1983 to authorize cities, after a public vote, to pledge tax collections from the "operating penny" to finance capital improvements. *See* Ark. Code Ann. §§ 26-75-201 — 26-75-223 (1987 & Supp. 1991). Thus, the "operating penny" is no longer limited to providing services, but can now be converted to pay for capital improvements, and, when the tax is imposed for capital improvements, the right to an immediate repeal by initiative is lost since the tax cannot be abolished until the bonds or leases are paid in full. Ark. Code Ann. § 26-75-210 (1987).

■ Amendment 62 to the Constitution of Arkansas was approved at the November 1984 general election. It is entitled "Local Capital Improvement Bonds" and repealed Amendments 13, 17, 25, and 49. Section 1(a) of Amendment 62 authorizes municipalities to issue bonds, upon approval by the voters, for capital improvements of a public nature and authorizes an ad valorem tax to repay the capital improvement bonds. The same section, 1(a), permits other taxes to be used to repay capital improvement bonds if authorized by the General Assembly.

■ As legislation implementing Amendment 62, the General Assembly enacted Act 871 of 1985. This act does not repeal Act 25 of 1981, the "operating penny" statute; rather, it recognizes the continuation of Act 25 of 1981 in sections 9(g), 9(h), 9(k), and 10(d). Codified at Ark. Code Ann. §§ 14-164-332(b), 333(2)(a), 336(c), 337(c)(1) (1987 & Supp. 1991). Section 9 of Act 871 of 1985, Ark. Code Ann. § 14-164-327 (1987), authorizes a municipality to adopt a new one cent "bond

penny" local sales and use tax to retire capital improvement bonds. Section 10 of Act 871, entitled "Pledge of Existing Sales and Use Tax," provides that a city, after approval by the voters, can pledge all or a portion of a pre-existing sales tax to retire capital improvement bonds. Ark. Code Ann. § 14-164-337(c)(1) (Supp. 1991). In 1988, by Act 25, the General Assembly amended Ark. Code Ann. § 14-164-338 to provide that a city, as an alternative to issuing capital improvement bonds, can construct pay-as-you-go capital improvements by levying a "bond penny" for up to twelve months when that penny, over a twelve-month period, will be sufficient to construct the improvement.

In this case, the City of Fayetteville sought to assist the Fayetteville School District in a school construction project. In November of 1987, the City asked the Attorney General if it could contribute any part of a city "operating penny" sales and use tax to the Fayetteville School District. The Attorney General responded that Arkansas statutes "prohibit the City from contributing local sales tax revenue to the schools." The Attorney General said the City might construct school facilities and rent them back to the school district. In April of 1988, the Attorney General again informed the City that it could not contribute a part of a local sales tax revenue to the local school district.

In October 1988, in spite of the Attorney General's opinion, the City of Fayetteville, by ordinance 3381, levied a one-cent sales and use tax, subject to approval by the City's voters at the November 1988, general election. The ordinance, in the material parts, provides:

> *Section 2.* A special election be, and the same is hereby called to be held in the City on the 8th day of November, 1988, at which election there will be submitted to the electors of the City the questions of (a) levying a local sales and use tax at the rate of one percent (1%), and (b) issuing capital improvement revenue bonds secured by a pledge of a portion of the City's 1% local sales and use tax, if approved, to finance the acquisition, construction, reconstruction and equipping of educational facilities for the Fayetteville School District.

> *Section 3.* The questions shall be placed on the

ballot for the election in substantially the following form:

FOR adoption of a 1% local sales and use tax within the City to be levied and collected to a maximum of $25.00 on each single transaction for a period of 20 years.

AGAINST adoption of a 1% local sales and use tax within the City to be levied and collected to a maximum of $25.00 on each single transaction for a period of 20 years.

Collection of the 1% local sales and use tax will not commence until collection of the City's existing 1% local sales and use tax shall have ceased. It is proposed that proceeds from the tax be used to finance a capital improvement program and economic development program (capital facilities) for the City.

FOR the issuance of revenue bonds secured by a pledge of a portion of the City's 1% local sales and use tax, if approved, to finance the acquisition, construction, reconstruction and equipping of $10,000,000.00 in educational facilities for the Fayetteville School District.

AGAINST the issuance of revenue bonds secured by a pledge of a portion of the City's 1% local sales and use tax, if approved, to finance the acquisition, construction, reconstruction and equipping of $10,000,000.00 in educational facilities for the Fayetteville School District.

The proposals were submitted to the voters on ballot forms prepared in compliance with the ordinance. The proposals appeared next to each other on the ballots with a line between them. The $10,000,000.00 educational facilities construction program passed by 8,556 to 4,084 votes, or better than two to one, but the tax was approved by a vote of only 7,643 to 5,260.

After the election, the City was again advised, this time by three different bond counsel, that the City had no authority to construct or finance local school district projects with the sales tax funds. A fourth bond counsel advised that the City might

implement the tax, construct the school facilities, and lease them to the school district. There was some discussion among city officials of a "friendly suit" to test the issue, but that was never pursued, and the City's primary bond counsel wrote:

> [W]e do not believe that it would be advisable for the City to seek a declaratory judgment as to the validity of bonds of the City secured by sales and use tax revenues for educational facilities for the Fayetteville School District. The law on a number of the points mentioned above is substantially against a favorable outcome, so that, although it is always possible that the validity of such bonds would be upheld, it seems probable that it would not.

Two years later the city desired to issue bonds to construct eleven other capital improvement projects. Section 14-164-337(b)(2)(A) of the Arkansas Code Annotated of 1987 provides that when the subsequent issuance of bonds is submitted to the voters, the ballot "[s]hall not resubmit the levy of the tax." In accordance with that provision, the City, in 1990, by ordinance 3480, submitted to the voters only the question of the issuance of capital improvement bonds for eleven other separate projects. The ballot title also provided:

> In addition, such proceeds may be pledged to secure the retirement of not to exceed $10,000,000 of educational facilities bonds of the City approved by the electors of the City at an election held on November 8, 1988.

On May 29, 1990, the city voters voted in favor of the issuance of capital improvement bonds for the eleven separate projects and the schools. On July 17, 1990, after voter approval of the eleven capital projects and the schools, the City Board of Directors passed resolution 116-90, which acknowledged that its legal counsel had informed the City that it could not issue sales tax bonds to construct or finance school district projects, and that the only way it could assist the school district was to authorize "the City Manager to seek to escrow $1,000,000 a year plus interest from the General Fund, non-regular fee and tax revenues over a ten-year period to assist the school board in school construction projects." In sum, in May 1990, the City publicly disclosed that no money from the sales tax would be applied to the

Fayetteville School District and that the City Manager was authorized to "seek" to take money from the City's non-regular general fund revenues for the schools.

On October 15, 1990, the City issued $33,019,000 in sales and use tax capital improvement bonds for the eleven capital improvement projects. Each month, after the sales and use tax funds are collected by the State, the funds are remitted to the bond trustee, intervenor Arvest Trust Company, N.A. The trustee then applies the amounts necessary for the retirement of the outstanding capital improvement bonds, retains a small amount as authorized in the trust indenture, and remits the rest to the city. The City then applies the money it receives to pay-as-you-go capital improvement projects.

On June 20, 1991, within a year after the City's resolution formally acknowledged that the proposal to issue sales tax bonds to construct or finance buildings for the local school district was illegal, the taxpayers filed this action. The Fayetteville School District and Arvest Trust Company, N.A. were allowed to intervene. As an affirmative defense, Arvest pleaded that the trial court was without jurisdiction to hear the case because this is an election contest and, as such, is barred by the statute of limitations, and also that the suit is barred by the doctrine of estoppel.

The chancellor rejected intervenor Arvest's affirmative defense of lack of jurisdiction because of limitations and held that it had jurisdiction. The chancellor reached the merits of the case and ruled that the voters, at the 1988 general election, approved the adoption of the sales and use tax for a period of twenty years, and that approval was given separately from the proposed issuance of $10,000,000 worth of bonds to construct facilities for the Fayetteville School District. The chancellor also ruled that the "operating penny" tax was validly enacted pursuant to authority found in Act 25 of 1981, and could be used "for any purpose for which the City's general fund may be used," the $33,019,000 in bonds issued in 1990 for the eleven separate capital improvement projects were validly issued under authority of Act 871 of 1985, Ark. Code Ann. § 14-164-337(a) (1987), and the current pay-as-you-go projects were validly financed pursuant to Act 25 of 1988, Ark. Code Ann. § 16-164-338 (Supp. 1991). The taxpayers filed a notice of appeal.

■ Arvest Trust Company, N.A., one of the appellees, argues that we must dismiss the appeal because the suit was an election contest, but it was not filed within 20 days of the election certification. *See* Ark. Code Ann. § 7-5-801(d) (1987). As stated, the trial court ruled against Arvest on this argument, and Arvest did not file a notice of cross-appeal. A notice of cross-appeal is necessary when an appellee seeks something more than it received in the lower court. *Moose* v. *Gregory*, 267 Ark. 86, 590 S.W.2d 662 (1979). Ordinarily, this failure to file a notice of cross-appeal would end the matter, but since Arvest does not seek any relief it did not receive in the lower court, we address the matter and hold that it is without merit.

■ An election contest may be generally described as an action to contest the certification of the vote on an issue. *See McClendon* v. *McKeown*, 230 Ark. 521, 323 S.W.2d 542 (1989); Ark. Code Ann. § 7-5-801 (1987). Here, the taxpayers do not contest the vote or the certification of the vote. Rather, as a part of their case, they plead that the tax was passed and certified, and that subsequently the purpose for the tax failed. Such a suit fits within the definition of a suit to prevent an illegal exaction. *Hartwick* v. *Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989). Article 16, section 13 of the Constitution of Arkansas confers upon any citizen the right to institute a suit to protect against an illegal exaction. Accordingly, we decline to dismiss this as the appeal of an election contest, and we reach the merits of the taxpayer's appeal.

■ Arvest additionally contends the suit is barred by the doctrine of estoppel. Clearly, in the proper case a taxpayer may be estopped from questioning the validity of a tax. In *Lawrence County* v. *Townsend*, 202 Ark. 887, 154 S.W.2d 4 (1941), we held that the taxpayer was estopped to contest the validity of a bond issue when proper notice of the levy of the tax was given, the taxes were levied and collected from the taxpayer for eleven years, those taxes were pledged and paid on bonds for the same eleven year period, and there was no failure of purpose of the bond issue. That is not the case before us. Here, the tax itself is at issue, and the suit was filed within one year after it was publicly known that the principal purpose of the tax had failed. Thus, the doctrine of estoppel is not applicable.

In their appeal on the merits, the taxpayers assign five rulings as error. Those five assignments involve a number of sub-points beginning with the argument that Act 25 of 1981 is either repealed or unconstitutional and running through the chancellor's construction of Act 25 of 1988, Ark. Code Ann. § 14-164-338 (Supp. 1991). Three of the assignments of error are closely related and involve the trial court's ruling that the tax is valid even through the voters approved the tax at the same time they approved issuing $10,000,000 in bonds for the Fayetteville School District. We treat those three closely related assignments together. It is not necessary for us to reach the other issues.

The vote to adopt the sales and use tax for twenty years, with its concomitant waiver of the right of initiative during that period, was inextricably linked to the vote to issue $10,000,000 in bonds to construct facilities for the Fayetteville School District. The chancellor found that the voters voted separately on these two issues since there was a line between them on the ballot form, but the fact that there was a line between them is only on the periphery of the issue. From the beginning, the city clearly tied the two issues together. Section 2 of the ordinance calling the election provides:

> A special election be, and the same is hereby called to be held in the City on the 8th day of November 1988, at which election there will be submitted to the electors of the City the questions of (a) levying a local sales and use tax at the rate of the one percent (1%), and (b) issuing capital improvement revenue bonds secured by a pledge of a portion of the City's 1% local sales and use tax, if approved, to finance the acquisition, construction, reconstruction and equipping of educational facilities for the Fayetteville School District.

The two proposals were then submitted next to each other on the same ballot form with a line drawn between them. A voter who wished to vote for the issuance of the $10,000,000 in bonds for the school district knew that he or she was required to also vote in favor of the tax because, without the tax, the bonds could not be issued. It is abundantly clear that the proposal for the issuance of the bonds for the construction of the school facilities was popular with the voters. In fact, that proposal received a two to one

favorable vote, 8,556 to 4,084. Those voters who wanted the school construction had only one choice—to vote for both the issuance of the school bonds and the twenty-year sales and use tax. There was a natural relationship between them. The two proposals were part of the same plan. They were united. If it were not for the proposed bond issue, the tax would have been only an "operating penny" tax subject to public initiative throughout its levy, and not a "bond penny" levied for twenty years.

Arvest contends that the chancellor's ruling that the two proposals were completely separate should be affirmed because the last sentence of the sales tax proposal on the 1988 ballot provided: "It is proposed that the proceeds from the tax be used to finance a capital improvement program and economic development program (capital facilities) for the City." The argument is without merit because the proposed $10,000,000 school bond issue was to be a part of the capital improvement program, and, if anything, this sentence would lead a voter to think the two proposals were linked. It is obvious that the City also thought the school bond issue was a part of its "capital improvement program" because its ordinance placing the "issuance of capital improvement bonds" on the ballot in 1990 stated:

> The retirement of the bonds shall be secured by a pledge of all of the proceeds of such tax or such portion of such proceeds as shall be determined by the City to be adequate to obtain satisfactory ratings or insurance on the bonds. In addition, such proceeds may be pledged to secure the retirement of not to exceed $10,000,000 of educational facilities bonds of the City approved by the electors of the City at an election held on November 8, 1988.

The vote on the tax and the vote on the school district bonds were inextricably linked, and the school district bonds were, at the least, a primary purpose of the tax. Three years after the favorable vote on the two proposals, the City admitted that the proceeds from the tax could not be used to issue the $10,000,000 in school bonds. An illegal exaction occurs when the purpose of a tax cannot be accomplished and the government retains the tax funds. *Hartwick* v. *Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989). We hold that an illegal exaction occurred when a primary purpose of the tax could not be accomplished and

the collection of the tax was continued.

Because we hold the tax constitutes an illegal exaction, we reverse the ruling of the trial court and remand for the chancellor to enjoin further collection of the tax. In addition, the chancellor is instructed to conduct a hearing to award an attorney's fee, *see* Ark. Code Ann. § 26-35-902 (1987), and to determine whether the City or the trustee now has any funds that rightfully belong to the taxpayers. If it develops that there are such funds, the chancellor should determine their disposition. The general rule is that funds which have been acquired through an illegal exaction are to be returned pro rata to the various taxpayers who initially paid them, but this case involves funds collected through a sales tax, and it is probable that the proof will show that it is impossible to determine, with any degree of economic certainty, who paid the taxes. Thus, it is probable that the funds, if any, cannot be refunded to the initial payers, and the chancellor must hold a hearing to determine how the funds are to be disposed. *See City of Jacksonville* v. *Venhaus*, 302 Ark. 204, 788 S.W.2d 478 (1990).

Reversed and remanded with instructions.

HAYS, GLAZE, and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. The lengthy and complex majority opinion boils down to the following simple issue: Did the citizens and voters of Fayetteville understand they were levying and pledging one penny of the city's existing local sales and use tax for a capital improvement program? Four members of this court answer, "No," and effectively set aside two Fayetteville elections where the voters of that city authorized a penny tax for such purposes. The trial judge and three members of this court say, "Yes, the Fayetteville voters did approve a tax for a capital improvements program." You, as an interested reader, can decide for yourself merely by reading the two ballots that were presented to the Fayetteville electors at elections held on November 8, 1988, and May 29, 1990.

The first ballot giving Fayetteville voters an opportunity to vote for or against such a one penny sales and use tax for capital improvements was printed on the Washington County General Election Ballot on November 8, 1988, and in pertinent part reads as follows:

472

DEFENDANT'S EXHIBIT 7

OFFICIAL BALLOT

GENERAL ELECTION

WASHINGTON COUNTY, ARKANSAS

NOVEMBER 8, 1988

Placing an "X" in the
square opposite the
person for whom you
wish to vote

| President and Vice President of the United States (Vote for One) [Text omitted.] | Proposed Constitutional Amendment No. 4 [Text omitted.] | |
|---|---|---|
| | | Fayetteville Director (Vote for One) [Text omitted.] |
| | Referred Question [Text omitted.] | |
| | | An Ordinance City of Fayetteville An ordinance providing that the City of Fayetteville will not use or promote the use of herbicides in public places in the city. |
| | Proposed Initiated Act 1 [Text omitted.] | For adoption of a 1% local sales and use tax within the city to be levied and collected to a maximum of $25.00 on each single transaction for a period of 20 years. ☐ Against adoption of a 1% local sales and use |

Vote on Amendments and Questions by Placing an "X" in the Square Opposite the Amendments and Question Either For or Against.

[Text omitted.]

tax within the city to be levied and collected to a maximum of $25.00 on each single transaction for a period of 20 years. ☐ Collection of the 1% local sales and use tax will not commence until collection of the City's existing 1% local sales and use tax shall have ceased. It is proposed that proceeds from the tax be used to finance a capital improvement program and economic development program (capital facilities) for the city.

For the issuance of revenue bonds secured by a pledge of a portion of the city's 1% local sales and use tax, if approved, to finance the acquisition, construction, reconstruction and equipping of $10,000,000 in educational facilities for the Fayetteville School District. ☐ Against the issuance of revenue bonds secured by a pledge of a portion of the city's 1% local sales and use tax, if approved, to finance the acquisition, construction, reconstruction and equipping of $10,000,000 in education facilities for the Fayetteville School District. ☐

As can be seen, all questions on the 1988 ballot were separated from each other by printed lines. The same is true regarding the sales and use tax and capital improvement question and the question pertaining to the school district bonds. The Fayetteville voter could separately vote for or against either of the two questions — the sales tax and capital projects question or the school bonds question. Instead, they voted for both, 60% in favor of the tax and city's capital improvements program and 68% in favor of the Fayetteville School District's educational facilities program.

Because the issuance of the bonds for school facilities was a primary purpose, the majority court suggests that the inclusion of the school bonds question on the 1988 ballot misled the Fayetteville voters into passing the city's sales tax and capital improvements program. Such a suggestion is clearly not supported by the record. No such finding was made by the trial court, nor was evidence submitted to support that finding.

The city improvement project was made a part of the sales and use tax question, and that being so, the city improvement program was clearly the primary purpose of any sales taxes approved by the Fayetteville voters. Nonetheless, to avoid any argument that the voters could have been misled as to the purpose of any approved tax, the city placed its capital improvements program before the voters once again and this time in unmistakable detail. The following ballot was before the Fayetteville voters at a May 29, 1990 election:

475

**OFFICIAL BALLOT CAPITAL IMPROVEMENT BONDS**

CITY OF FAYETTEVILLE, | ARKANSAS | MAY 29, 1990

### INSTRUCTIONS TO VOTER
1. To vote you must blacken the Oval ( ● ) completely next to "FOR" or "AGAINST" in each question.
2. Use only the pencil provided.
3. After voting, deposit ballot in ballot box.

There is hereby submitted to the qualified electors of the City of Fayetteville, Arkansas, pursuant to ordinance No. 3480 of the City. The issuance of capital improvement bonds under Amendment No. 62 to the Arkansas Constitution, as implemented by Act 871 of 1985, as amended, in the principal amount set forth in each question below, for the purpose of financing, with any other available funds, the costs of acquiring, constructing, reconstructing, improving, renovating, expanding and equipping capital improvements for the City as described in the respective question below and related costs of issuance, such improvements including (i) streets and bridges, (ii) water transmission and distribution facilities, (iii) drainage improvements, (iv) solid waste collection, disposal, compacting and recycling facilities, (v) public parks and playgrounds, (vi) police equipment, apparatus and facilities, (vii) firefighting vehicles, equipment, apparatus and facilities, (viii) emergency medical service vehicles, equipment and facilities, (ix) the City Youth Center swimming pool and related facilities, (x) parking facilities for the Dickson Street area and (xi) maintenance and storage buildings and facilities. The City has levied a one percent (1%) local sales and use tax within the City pursuant to Ordinance No. 3361, adopted on October 4, 1988, to be levied and collected to a maximum of $25.00 on each single transaction. The retirement of the bonds shall be secured by a pledge of all of the proceeds of such tax or such portion of such proceeds as shall be determined by the City to be adequate to obtain satisfactory ratings or insurance on the bonds. In addition, such proceeds may be pledged to secure the retirement of not to exceed $10,000,000 of educational facilities bonds of the City approved by the electors of the City at an election held on November 8, 1988. In the event that the electors shall approve only a portion of the bonds proposed to be issued, there shall only be issued bonds for the purposes approved by the electors. The bonds that are approved may be combined into one or more issues of bonds, which may be issued at one time or in series from time to time.

### QUESTION ONE
A bond issue in principal amount not to exceed $12,325,000 for the purpose of constructing, reconstructing and improving City streets and bridges.
⊝ FOR
⊝ AGAINST

### QUESTION TWO
A bond issue in principal amount not to exceed $11,515,000 for the purpose of acquiring, constructing and equipping water transmission and distribution facilities.
⊝ FOR
⊝ AGAINST

### QUESTION THREE
A bond issue in principal amount not to exceed $1,773,000 for the purpose of acquiring, constructing and reconstructing drainage improvements.
⊝ FOR
⊝ AGAINST

### QUESTION FOUR
A bond issue in principal amount not to exceed $1,179,000 for the purpose of acquiring, constructing and equipping solid waste collection, disposal, compacting and recycling facilities.
⊝ FOR
⊝ AGAINST

### QUESTION FIVE
A bond issue in principal amount not to exceed $561,000 for the purpose of acquiring, constructing and equipping public parks and playgrounds.
⊝ FOR
⊝ AGAINST

### QUESTION SIX
A bond issue in principal amount not to exceed $213,000 for the purpose of acquiring, constructing and equipping police equipment, apparatus and facilities.
⊝ FOR
⊝ AGAINST

### QUESTION SEVEN
A bond issue in principal amount not to exceed $1,697,000 for the purpose of acquiring, constructing and equipping firefighting vehicles, equipment, apparatus and facilities.
⊝ FOR
⊝ AGAINST

### QUESTION EIGHT
A bond issue in principal amount not to exceed $69,000 for the purpose of acquiring, constructing and equipping emergency medical service vehicles, equipment and facilities.
⊝ FOR
⊝ AGAINST

### QUESTION NINE
A bond issue in principal amount not to exceed $998,000 for the purpose of expanding and renovating the City Youth Center swimming pool and related facilities.
⊝ FOR
⊝ AGAINST

### QUESTION TEN
A bond issue in principal amount not to exceed $2,013,000 for the purpose of acquiring, constructing and equipping parking facilities for the Dickson Street area.
⊝ FOR
⊝ AGAINST

### QUESTION ELEVEN
A bond issue in principal amount not to exceed $575,000 for the purpose of acquiring, constructing and equipping City maintenance and storage facilities and buildings.
⊝ FOR
⊝ AGAINST

In order to retire the bonds, the City shall pledge all of the proceeds its one percent (1%) local sales and use tax previously approved by the electors of the City or such portion of such proceeds as shall be determined by the City to be adequate to obtain satisfactory ratings or insurance on the bonds.

**DEFENDANT'S EXHIBIT**

BF9 | 017

As stated above, the city listed the foregoing menu of capital improvements, totaling more than $33 million, to assure the city voters that their one penny sales tax would be utilized for such city improvements, if approved. Obviously, if the voters thought they had been in any misled by their earlier 1988 ballot, they could have voted against any or all of the capital improvements offered them on the May 29, 1990 ballot.[1] They did not.

While the parties in this appeal argue a number of issues, the majority opinion reverses the trial court only because the majority court suggests the vote on the tax and the vote on the school district bonds were inextricably linked, and the issuance of school district bonds was a primary purpose of the tax. The court then concludes the school bonds are illegal, and because they are invalid, the sales tax and capital project purposes must also fail. The majority court further suggests the city admits the tax proceeds cannot be used to issue the school bonds approved at the 1988 election.

Again, the sales tax involved here had a two-fold purpose in 1988 — city improvements and school construction — and clearly the capital improvement purpose was primary and approved by the voters, not once, but twice. If any doubt clouded the 1988 vote, Fayetteville voters removed those doubts when they unmistakably approved those city capital projects in 1990.

Finally, I do not read the city's argument on appeal to admit the sales and use tax proceeds cannot be utilized to issue the $10 million in school bonds. However, even if such school bonds would be invalid and could not be issued (which I am inclined to believe), that conclusion under the facts of this case does not defeat the sales tax and city capital improvement bonds approved by the Fayetteville voters.

We do Fayetteville voters a real disservice by assuming, without proof, that they did not know what they were doing when casting their ballots at the 1988 and 1990 elections. This case does

---

[1] If both the city improvements program and school district construction project failed to obtain voter approval or failed for other legal cause, the tax approved by the voters could not be collected and use for any other purpose, and the taxpayers are then entitled to a refund. *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989).

*not* involve a city government that, by intention or deed, exercised bad faith or misled the electorate into approving a sales tax and issuance of bonds without first having an intelligible vote on such questions. The voters are entitled to the city projects they approved even though the school district projects may prove invalid. Accordingly, I would affirm the trial court's decision.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
MARCH 9, 1993

847 S.W.2d 41

*John Lile*, for appellant.

*Friday, Eldredge & Clark*, by: *Larry W. Burks* and *Jeffrey H. Moore*, for appellee Arvest trust Company.

*Jerry E. Rose*, Fayetteville City Attorney, for appellee.

ROBERT H. DUDLEY, Justice. On petition for rehearing, the City of Fayetteville and Arvest Trust Company, N.A., contend in separate petitions that the majority opinion contains both factual and legal errors. The facts stated in the majority opinion are correct, and we need not discuss the facts.

The petitions also allege that the majority opinion contains a legal error because it misapplies the case of *Hartwick* v. *Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989). The facts in *Hartwick* were that, in 1975, the citizens of North Little Rock approved an ad valorem tax sufficient to pay the principal and interest on $2,605,000 in bonds issued for the construction of public improvements. The election was called, and the bonds were issued pursuant to Amendment 13 to the Constitution of Arkansas, which has now been repealed by Amendment 62. The city ordinance calling for the election and the ballot title both

specifically proposed the construction of a drainage canal as a part of the public improvements.

The City commenced construction of all the improvements except the canal, which was to be constructed with the assistance of the federal government. At that time, 1976, the City placed $700,000 of the bond proceeds in a special account for the City's share of the cost of the canal. The interest earned was to remain in the account.

The other improvements were completed, but several years later, the United States Army Corps of Engineers determined that the canal was not feasible and the United States would not share in the cost of construction. In 1987, twelve years after the collection of the tax had commenced, the City sought to use the $700,000 principal, plus the $1,100,000 in accrued interest, for the construction of curbs and gutters and published an ordinance to that effect. Some taxpayers filed suit that same year, 1987, and sought a refund of the $1,800,000 in principal and interest.

██ The taxpayers did not seek to stop the collection of the tax for perhaps either of two reasons. First, after so many years, the bond issue may have been paid in full and the tax collections may have ceased. The opinion does not expressly state that such was the case, but the opinion clearly implies that it was the case because it provides: "The *Bell* opinion was almost directly on point with respect to the present case when it stated: '[W]e have held that the taxpayers, in instances of *bond surpluses accumulating as a result of the retirement of the original bond issue*, are entitled to a refund.' " *Id.* at 509, 780 S.W.2d at 534 (emphasis supplied). Second, even if the bond issue had not been paid in full at the time the taxpayers filed the suit for the refund, they may well have determined that they would be estopped from contesting the tax after so many years. *See Lawrence County* v. *Townsend*, 202 Ark. 887, 154 S.W.2d 4 (1941). After a trial on the merits, the chancellor ruled that an illegal exaction had occurred and ordered a refund. We affirmed and held that an illegal exaction occurs when the purpose of a tax cannot be accomplished and the government retains the tax funds. In the case at bar, we correctly cited *Hartwick* for the proposition that an illegal exaction occurs when a primary purpose for a tax cannot be accomplished.

In this case, the City of Fayetteville inextricably linked the vote on the tax with the bonds to be issued to finance buildings for the local school district. The school district bonds were a primary

purpose of the tax. The City decided not to issue bonds to construct or finance buildings for the local school district. The taxpayers filed this suit to enjoin the future collection of the tax within the same year that the City made it known that it would not issue bonds to construct or finance buildings for the local school district. The taxpayers filed this suit to enjoin the future collection of the tax. We held the injunction should issue.

The petitioners for rehearing contend the holding is inconsistent with *Hartwick* v. *Thorne* because, they contend, under that case we should have only enjoined the collection of that portion of the sales tax which would have been required to pay the estimated debt service on the bonds to have financed the school buildings. The argument is without merit for a number of reasons, but the primary one is that *Hartwick* v. *Thorne* simply does not contain a holding about when an injunction against a tax should or should not issue. The taxpayers in *Hartwick* v. *Thorne* did not ask for an injunction against further collection of the tax, the trial court did not rule on such an issue, and we made no holding on such an issue. The opinion in that case discussed a remedy in light of a "surplus accumulating as a result of the retirement of the original bond issue."

In the case at bar, the vote for or against the tax was inextricably linked to the bonds to finance buildings for the local school district. Those who voted in favor of the tax solely or primarily in order to finance or construct buildings for the local school district were misled. Soon after they discovered that they had been misled, they filed this suit to enjoin further collection of the tax. They are entitled to such relief. *See Arkansas-Missouri Power Co.* v. *City of Rector*, 214 Ark. 649, 217 S.W.2d 335 (1949). This is not a case involving a surplus accumulating as a result of the original bond issue.

Petition for rehearing denied.

HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. The majority tries to distinguish *Hartwick* by *surmising* that the bond issue there *may* have been paid in full and the tax collections *may* have ceased by the time the taxpayers brought suit to obtain a refund for the one purpose, a drainage canal, which had not been constructed because it became infeasible. Even if the majority court's guesswork in reading this assumption into the *Hartwick* opinion were true, it fails to answer the issue here. Nor is an answer to the issue here found in the majority's recital that *Hartwick* stands for

the proposition that an illegal exaction occurs when a primary purpose of a tax cannot be accomplished.

Here, the trial court made no finding that Fayetteville voters were misled and to the contrary, it spelled out in its order that the ballot contained twenty-two separate issues and the voters voted separately on each one. Yet, the majority *in this appeal makes the finding of fact* that the Fayetteville voters were misled. The court mentions *no* evidence to support its finding because there is no such evidence. Again, I suggest the Fayetteville voters read and understood the ballots which separately reflected each construction project issue and the exact amount each project would cost. If any project failed — as was the situation in *Hartwick* — the taxpayers would be effectually refunded that amount. If the monies were already collected, the funds would be remitted. If such funds had not yet been collected, then the court would enjoin collection of that portion of the sales tax required to pay the debt service on the failed project. In any event, like in *Hartwick*, this court's decision finding the $10 million construction of education facilities illegal should not impair the other improvement projects, especially where, as here, the voters separately voted and approved each issue. The court should limit its holding to enjoining the collection of that portion of taxes required to pay the debt service on the $10 million improvement project for the school district.

Although Justices Hays and Newbern took a more expansive view than did the majority in *Hartwick*, I think the concerns they expressed in their dissent are worth repeating here. Therein, they expressed their beliefs that North Little Rock should still be allowed to use the funds that the voters approved for the canal project for the other purposes stated in the ballot title. My colleagues Hays and Newbern wisely expressed their fear that the *Hartwick* decision might be misapplied in the future. They stated the following:

> [W]e find nothing at all wrong with using the $700,000 plus the accumulated interest for street improvements in the Rose City area which would presumably have benefitted from the canal. Such a holding would not mean that a city government could hoodwink voters by intentionally promising that which it had no intention of delivering. Again, that is not an issue in this case, and [we] fear the

precedent we will set by returning the bond money to the taxpayers instead of allowing it to be used for a purpose stated in the ballot title will haunt us. While the disappointment of those who hoped for the construction of the canal is understandable, [we] conclude that the city's proposed use of the bond money for one of the purposes stated in the ballot title does not constitute an illegal exaction.

This court has in the present case misapplied the *Hartwick* holding in a manner I find worse than Justices Hays and Newbern predicted. We should correct our error now, not later, by granting the appellees' petitions for rehearing.

HAYS, J., joins this opinion.