The Honorable Shirley Walters State Representative Post Office Box 1876 Greenwood, AR 72936-1876
Dear Representative Walters:
I am writing in response to your request for my opinion on the following question, which you have submitted on behalf of the Waldron Deputy City Attorney:
 May the City of Waldron City Council lawfully impose a sales tax for the operation and maintenance of a building (for capital improvements) with the purpose of said taxes to be used to enter into a contract for services with the Scott County Boys and Girls Club to provide the City of Waldron with services?
The deputy city attorney expresses some concern that the city "would intend to impose the sales tax for the capital improvement with full knowledge that the revenues of said sales tax would be used to enter the contract for services with the Boys and Girls Club" (the "Club"). She further expresses concern "about whether or not the implementation of the sales tax would be lawful since from the outset, the revenues would be used to fund the contract for services."
It is not entirely clear from the deputy city attorney's question whether any of the proposed tax proceeds would indeed be devoted to "operation and maintenance" expenses that might be characterized as effecting "capital improvements." Regardless of whether the City of Waldron City Council intends to devote at least some portion of tax revenues to capital improvements, underlying her request appears to be a concern that the Arkansas Code simply does not authorize levying a sales tax under any subchapter of the Arkansas Code if the proceeds are to be used to contract for services with a Girls' and Boys' Club.
RESPONSE
Only a finder of fact acquainted with all the attendant circumstances could provide a definitive answer to this question. It is unclear from the deputy city attorney's question whether the Waldron City Council, seeking to fund a service contract with a Girls' and Boys' Club, is proposing to fund such a contract by levying a local sales tax under a subchapter of the Arkansas Code that authorizes such a tax solely for the purpose of financing capital improvements. It is further unclear whether the city council intends to devote any of the tax proceeds to capital improvements. However, purely as a matter of law, I will opine that a city cannot devote any portion of a levy to funding a service contract if the levy occurred pursuant to a subchapter of the Code that authorized levying a sales tax only to fund capital improvements. Having offered this conclusion, I will further note that subchapter 2 of title 26, chapter 75 of the Arkansas Code authorizes a city council, with voter approval, A.C.A. § 26-75-208 (Supp. 2005), to levy a sales tax to be devoted to capital improvements, otherwise authorized municipal services or both. The Code expressly authorizes levying a sales tax to provide municipal services. A.C.A. § 26-75-217(a) (Repl. 1997) and A.C.A. §26-75-201(c)(2) (Supp. 2005). This tax is commonly known as the "operating penny," which a city may expend in any manner that it might expend general funds. The Arkansas Supreme Court has further expressly held that "operating penny" revenues may also be devoted to financing capital improvements. Although these statutes would appear to authorize a tax of the sort described in your request, only a finder of fact acquainted with the details of the levying ordinance and the ballot could determine whether an effort by the Waldron City Council to levy a sales tax to finance a particular service contract would pass muster. Finally, I question whether any subchapter of the Arkansas Code other than that containing the "operating penny" provisions would support levying a sales tax to fund services of the sort described in your request.
As I noted in Ark. Op. Att'y Gen. No. 2005-018:
 Municipal corporations of the first class[1] are "authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to [their] municipal affairs including, but not limited to, the power to tax." A.C.A. § 14-43-602
(Repl. 1998). Despite this grant of authority, it is clear that municipal corporations in Arkansas cannot pass any laws contrary to the general laws of the State. See Arkansas Const. Art. 12, §§ 3 and 4; and Nahlen v. Woods, 255 Ark. 974, 504 S.W.2d 749 (1974). In addition, despite the seemingly broad grant of authority in A.C.A. § 14-43-602
(adopted in 1971), the Arkansas Supreme Court has continued to hold that a city possesses only those powers that are expressly granted by the Constitution or the General Assembly, necessarily incident to the execution of those granted powers, or powers that are indispensable, and not merely convenient, to their objects and purposes. Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827 (1997); see also Op. Att'y Gen. 2004-046. In addition, substantial doubt as to the existence of a power in a municipal corporation must be resolved against it. Cosgrove, supra (citing City of Little Rock v. Cash, 277 Ark. 494, 501, 644 S.W.2d 229 (1982)).
Specifically with respect to a municipality's power of taxation, the Arkansas Supreme Court has observed:
 A basic premise, to which we have long adhered, is that a municipal corporation has no inherent power to levy taxes, but can levy only such taxes as are authorized by law. Vance v. City of Little Rock, 30 Ark. 435 (1875). Article 16, section 11, in pertinent part, provides:" No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same. . . ."
Hasha v. City of Fayettevile, 311 Ark. 460, 462, 845 S.W.2d 500 (1993).
A municipality may levy a sales tax for specific purposes under various sections of the Arkansas Code. See, e.g., A.C.A. §§ 26-73-110 through -112 (Repl. 1997 Supp. 2005) (special local sales and use tax); A.C.A. §26-73-113 (Repl. 1997) (alternative local sales and use tax); A.C.A. §26-73-114 (Repl. 1997) (dedication to school district). Such purposes may include pledging the tax to retire a bond issue. See, e.g., A.C.A. §§14-164-301 through -340 (Repl. 1998 Supp. 2005), (Local Government Bond Act of 1985); A.C.A. § 26-75-201 through -223 (Repl. 1997 Supp. 2005) (capital improvement bonds). Certain city sales taxes may further be expended "for any purpose for which the city's general funds may be used." A.C.A. § 26-75-217(a) (Repl. 1997); accord A.C.A. §26-75-201(c)(2) (Supp. 2005). The latter statutes authorize the local sales tax commonly known as the "operating penny." See generally Hasha,supra. Any levy of an "operating penny" tax will be generally available "for the benefit of the city" upon approval by the voters of the city. A.C.A. § 26-75-208 (Supp. 2005).
In my opinion, the last two of the statutes recited in the preceding paragraph appear to authorize an enterprise of the sort described in the deputy city attorney's request.[2] Subsection 26-75-217(a) of the Code provides in pertinent part:
 The State Treasurer shall transmit to the treasurer or financial officer of each such city that city's share of local sales and use taxes collected under this subchapter periodically as promptly as feasible. Transmittals required under this subchapter shall be made at least monthly in each state fiscal year. Funds so transmitted may be used by the city for any purpose for which the city's general funds may be used.
(Emphasis added.) This statute is consistent with A.C.A. §26-75-201(c)(2), which provides:
 Collections of a tax levied hereby may be used to secure the payment of bonds or for any purpose for which the municipality's general fund may be used or for a combination thereof.
(Emphasis added.) It is further consistent with A.C.A. §26-75-208(b)(1), which provides the following general guideline regarding the form of the ballot title to be used in the election approving or rejecting the levy:
 The ballot title to be used at such election shall be substantially in the following form:
 "FOR adoption of a ____ percent (____%) local sales and use tax within ______________ name of city)."
 "AGAINST adoption of a ____ percent (____%) local sales and use tax within ___________ (name of city)."[3]
This ballot title accords with the notion that operating penny tax revenues will be available for any permissible use to which general funds might be put. Accord Ark. Ops. Att'y Gen. Nos. 2005-044; 98-230; 95-165; 95-033; 92-328.
In Hasha, supra, the court offered the following historical analysis of the operating penny legislation:
 Act 25 of 1981, extraordinary session, authorized cities to adopt a local sales and use tax upon approval by the voters. The act provides that the tax can be abolished either by vote of the city council or by vote of the qualified voters of the city acting in accordance with the initiative procedures of Amendment 7, 1981 Ark. Acts 252(f). The emergency clause of the act provided that the tax was for city "services." This tax was referred to as the cities' "operating penny" tax since it could be "used by the city for any purpose for which the city's general funds may be used." Id. 7. Section 2(d) of the act provided that the voters of the city must approve or reject the tax and that:
 The ballot title to be used at such election shall be substantially in the following form:
 "FOR adoption of one percent (1%) local sales and use tax within (name of city)."
 "AGAINST adoption of a one percent (1%) local sales and use tax within (name of city)."
 Act 25 of 1981, summarized above, was amended by Act 726 of 1983 to authorize cities, after a public vote, to pledge tax collections from the "operating penny" to finance capital improvements. See Ark. Code Ann. 26-75-201 — 26-75-223 (1987 Supp. 1991). Thus, the "operating penny" is no longer limited to providing services, but can now be converted to pay for capital improvements, and, when the tax is imposed for capital improvements, the right to an immediate repeal by initiative is lost since the tax cannot be abolished until the bonds or leases are paid in full. Ark. Code Ann. 26-75-210 (1987).
311 Ark. at 462-63.
In 1984, the voters approved Ark. Const. amend. 62, which authorized the issuance of local capital improvement bonds to be repaid, inter alia,
from sales tax revenues. The court summarized as follows the legislative aftermath of the voters' adoption of Amendment 62:
 As legislation implementing Amendment 62, the General Assembly enacted Act 871 of 1985. This act does not repeal Act 25 of 1981, the "operating penny" statute; rather, it recognizes the continuation of Act 25 of 1981 in sections 9(g), 9(h), 9(k), and 10(d). Codified at Ark. Code Ann. 14-164-332(b), 333(2)(a), 336(c), 337(c)(1) (1987 
Supp. 1991).
311 Ark. at 463. Consequently, operating penny tax revenues may be used to finance both capital improvements and any services a city is authorized to provide. With respect to the provision of capital improvements, for instance, one of my predecessors opined in Ark. Op. Att'y Gen. No. 92-328 that operating penny tax revenues might be used to construct and to equip a city hospital. With respect to the provision of services, the deputy city attorney suggests that funding services through a sales tax levy might be permissible based upon the reasoning in Ark. Op. Att'y Gen. No. 95-165, in which my predecessor opined that a city might, under appropriate circumstances, use operating penny sales tax revenues to pay teenagers as worker trainees. My predecessor further opined that it might be appropriate for the city to fund such training through a private organization using operating penny tax revenues. I agree with these conclusions and believe they apply in this instance as well.
One of my predecessors and I have both previously opined that cities have the power to contract with a Girls' Club or Boys' Club to provide services that fulfill a public purpose. Ark. Ops. Att'y Gen. Nos.2005-046 and 1999-408. However, I must stress that the crucial factual issues, which I cannot resolve, will be whether such a contract indeed serves a public purpose and whether the contract is supported by adequate consideration. Regarding the issue of consideration, I concur in all respects with my predecessor's summation of the applicable law:
 [N]othing in the constitution precludes the county from contracting with a private nonprofit charity, so long as the contract is supported by adequate consideration and serves a proper governmental end. Cities and counties clearly can enter into contracts that are supported by valid consideration. See Ops. Att'y Gen. No. 98-025 and 97-250; A.C.A. § 14-54-101(2); City of Ft. Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525 (1976); City of Harrison v. Boone County, 238 Ark. 113, 378 S.W.2d 665 (1964). Moreover, this authority includes the power to contract with nonprofit organizations. See Woodruff v. Shockey, 297 Ark. 595, 764 S.W.2d 431
(1989). Such contracts have been upheld as not being in violation of Article 12, § 5. See Arkansas Uniform Linen Supply v. Institutional Services Corp., 287 Ark. 370, 700 S.W.2d 358 (1985). To the extent, then, that the provision of recreational services for young people is an appropriate governmental function, the county might contract for its performance by, say, a Girls' Club or Boys' Club. Again, the decision to undertake such a contract would necessarily be based on factual considerations I am unprepared and unauthorized to review. I advise you to consult with local counsel regarding such matters.
Ark. Op. Att'y Gen. No. 1999-408; accord Ark. Ops. Att'y Gen. Nos.2005-046 and 2001-135.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] The City of Waldron falls within this category.
[2] I do not believe any of the remaining statutes recited in my previous paragraph are designed to finance a provision of services of the sort described in the deputy city attorney's request. For instance, the Local Government Bond Act of 1985, A.C.A. §§ 14-164-301 through -340 (Repl. 1998 Supp. 2005), which authorizes financing capital improvements through the issuance of bonds funded by a local sales and use tax, A.C.A. § 14-164-333, defines "capital improvements" as including "[a]ny physical public betterment," A.C.A. § 16-164-303(2)(A) — a term that under the statute does not include operations or the provision of services. See Ark. Op. Att'y Gen. No. 95-033 (noting that the Local Government Bond Act was enacted to implement Ark. Const. amend. 62, which "authorizes the issuance of bonds only for the purposes of financing capital improvements of a public nature and facilities for the securing and developing of industry"). Moreover, the statute's list of physical facilities subject to "capital improvements" under the subchapter does not appear to include a building of the sort that might house a Girls' and Boys' Club. In addition, the tax authorized at A.C.A. § 26-73-110 is expressly identified at A.C.A. §§ 26-73-111 and -112 as restricted in its uses to "public mass transportation systems and facilities." Furthermore, although A.C.A. § 26-73-113(a)(2)(A) authorizes a city, subject to voter approval, to levy a sales tax to "[f]inance the operation, maintenance and/or rental expense of capital improvements," I have found no authority for the proposition that the term "operation" in this statute can or should be read broadly enough to include contracting with a private entity to conduct an independent activity, perhaps only sporadically, such as running a Girls' and Boys' Club. Rather, I believe this term refers to the functioning of the capital facility itself — as, for instance, the "operation" of a public waterworks. Finally, as noted above, the tax authorized at A.C.A. § 26-73-114 must be expressly dedicated to a school district located wholly or partially within the municipality.
[3] Act 1269 of 2005 added to this statute a subsection that provides in pertinent part:
 SECTION 1. Arkansas Code § 26-75-208, concerning municipal sales and use taxes on capital improvements, is amended to add an additional subsection to read as follows:
 (c)(1)(A) The ballot may also indicate designated uses of the revenues derived from the sales and use tax.
 (B) If the ballot indicates designated uses and the tax is approved, the proceeds shall only be used for the designated uses set forth in the ballot.
 (2) The proceeds may be used for other designated uses if the electors approve a change in the designated use of the revenues by vote under this subsection.