YOUNG v. LINWOOD SCHOOL DISTRICT NO. 17.

4-4574

Opinion delivered November 2, 1936.

*C. B. Craig,* for appellant.
*Hooker & Hooker,* for appellees.

McHANEY, J. Appellee school district and its board of directors have made application to the Federal Emergency Administration of Public Works for a loan of approximately $16,000 and a grant of approximately $13,000, by virtue of a resolution adopted by the board of directors on September 26, 1935. The loan, if made, will be evidenced by negotiable coupon bonds bearing interest at 4 per cent. per annum. With the funds thus realized the district proposes to construct and equip a gymnasium for said school district to provide for the physical culture of the pupils of said school and also to provide rooms in the building for home economics, vocational agriculture, shower baths, dressing rooms, and indoor toilets, with concrete walks around said building and connecting said building with buildings now belonging to, and in use now, by said district. Appellant brought this action to enjoin the district and its directors from executing said bonds, from borrowing said money and from pledging the future funds of the district for the payment thereof on the ground that § 59 of act 169 of the Acts of 1931, did not authorize the directors to borrow money for the purpose intended. Appellees answered, denying its want of authority and alleging that it had ample authority under the provisions of said act for the constructing and equipping of the proposed

building, as hereinbefore set out. Trial resulted in a decree dismissing appellant's complaint for want of equity and holding that the school district and the board of directors had the authority to construct and equip the proposed building and to issue bonds therefor "payable from a voted tax levy, and pledge for said payment, the revenue of said school district."

For a reversal of the judgment, appellant insists that the trial court erred in so holding. Section 59 of said act 169 of 1931, relied upon by appellant as limiting the power of the directors, reads as follows: "All school districts are authorized to borrow money and issue negotiable coupon bonds for the repayment thereof from school funds, for the building and equipment of school buildings, making additions and repairs thereto, purchasing sites therefor, and for funding any indebtedness created for any purpose and outstanding at the time of the passage of this act, as provided in this act." It is insisted that the words "for the building and equipment of school buildings" exclude the idea that the directors have power to borrow funds for the erection and equipment of such a building as is contemplated in this case. We cannot agree with appellant even though said § 59 stood alone, as we think the words "school buildings," as used therein, mean any such school district buildings as may be needful, necessary or proper for the conduct of a school in said district. But this section does not stand alone. The section immediately preceding, § 58, provides: "All school districts in the State are hereby granted the power of eminent domain, and may take and use private property for the use of the school district for school purposes, and such school purposes shall include a site for a school house, necessary playground and athletic fields, stadiums, libraries, and other necessary uses incidental to the maintenance of schools and the welfare of teachers and pupils. * * *." We think this language confers specific power and authority on school districts to construct buildings such as the one involved in this litigation. A gymnasium may be said to be an indoor playground or an indoor athletic

field or an indoor stadium. Webster defines a stadium, in one definition, to be: "A similar modern structure, with its inclosure, used for athletic games, etc." Moreover, the language at the conclusion of the above sentence, "other necessary uses incidental to the maintenance of schools and the welfare of the teachers and pupils" is broad enough to include the power here asserted. Moreover, a part of the purpose of the proposed building is to provide rooms therein for home economics, and vocational agriculture. These are subjects which are taught in many schools and are so authorized in § 189 of the same act.

A like subject has been under consideration by the Arizona Supreme Court in the case of *Alexander* v. *Phillips,* 31 Ariz. 503, 254 Pac. 1056, 52 A. L. R. 244. The question there before the court was whether a stadium is a school house within the meaning of the statute of that state, which authorized under certain conditions the borrowing of money and issuing of bonds of the district, among other things, "for building school houses, and supplying same with furniture and apparatus," etc. The court said: "Is such a structure (stadium) a school house? The terms school house and school are properly defined as follows: school house—a building which is appropriated for the use of a school or schools, or as a place in which to give instruction. School —a place for instruction in any branch or branches of knowledge. Webster's New Int. Dict., 1925 ed." After considering and discussing the question, the court said: "For the foregoing reasons, we are of the opinion (1) that physical education is one of the branches of knowledge legally imparted in the Phoenix union high school; (2) that competitive athletic games and sports in both intra and inter mural games are legal and laudable methods of imparting such knowledge; (3) that a structure whose chief purpose is to provide for the better giving of such competitive athletic games and sports as aforesaid is reasonably a schoolhouse within the true spirit and meaning of paragraph 2736, *supra.*"

We cannot agree with appellant that the words "school buildings" as used in § 59 of said act, especially

in view of the other provisions of the act, should be restricted to such buildings as are used exclusively for mental training or for the teaching of such subjects as are ordinarily taught in the public schools. We think it just as important that children should be developed physically and morally as it is that they should be developed mentally. Our conclusion is that the directors and the district had the power and authority to accomplish the purpose undertaken in this case.

The decree of the chancery court is, therefore, affirmed.