In the endeavor to construct and operate a municipal light plant and distribution system in and for the City of Rector, the council of that city passed Ordinance 212 on February 12, 1946, entitled:
"An Ordinance Calling, Authorizing, and Directing a Special Election to be Held in the City of Rector, Arkansas, for the Purpose of Testing the Sense of the Qualified Voters of Said City upon a Proposition to Issue and Sell Bonds on Said City of Rector in the Amount of $65,000, with the Proceeds of Which to Build and Construct an Electric Light Plant in and for Said City and to Provide a Distributing System Therefor."
Section One of the ordinance ordered and called a special election to be held on March 26, 1946, "for the purpose of testing the sense of the qualified voters of said City upon a proposition to issue and sell bonds of the said City, of Rector in the amount of $65,000 with the proceeds of which to build and construct an electric light plant in and for said City and to provide a distributing system therefor."
Other sections of the ordinance designated the polling places, and the rate of interest the bonds should bear, and provided that all of the money realized from the sale of bonds should be used to build and construct the electric light plant and distributing system to be used for the purpose of providing and furnishing to the city and its inhabitants electric power or energy for light and other purposes. Provision was made for giving notice of the election and section eight provided that the ballot to be used at the election should be in the following form: *Page 652 
 "SPECIAL BOND ELECTION BALLOT
City of Rector, Arkansas
PROPOSITION:
"To issue and sell bonds of the City of Rector, Arkansas, in the sum of $65,000, with the proceeds of which to build and construct an electric light plant in and for said City and to provide a distributing system therefor.
FOR THE BONDS
AGAINST THE BONDS."
The preamble to Ordinance 212 recites that "The Council finds that the estimated cost of said plant and distributing system is Sixty-five Thousand Dollars, and that the ordinary income and revenue of said City are insufficient to meet an expenditure of such an amount."
Due notice of the election was given, which recited that the election was called for the purpose of testing the sense of the qualified electors of said city upon the proposition above stated.
Pursuant to this notice, the election was held on March 26, 1946, and a large majority of the electors voting thereat voted in favor of the bond issue, and a week later, on April 2, 1946, an ordinance, No. 213, was passed, levying the tax for the purpose of paying the bonds authorized by ordinance No. 212. Section 2 of ordinance 213 reads as follows:
"In order to better secure the payment of said bonds, the Mayor of the City of Rector is hereby authorized and directed to pledge the net revenues derived from the operation of an electric light plant and distributing system constructed by and with the proceeds of said bonds, over and above the necessary expenses incurred in operating such light plant and distributing system. It is intended by this section to authorize the irrevocable pledge of all revenues derived by the City of Rector from the operation of an electric light plant and distributing system *Page 653 
purchased with the money derived from the sale of said bonds, after having first paid all necessary expenses incurred in the operation of said electric light plant and distributing system."
Section three of ordinance 213 directs the City Clerk to transmit a copy of the ordinance to the County Clerk to the end that the taxes may be extended.
Appellant power company filed a complaint on April 24, 1946, against the City, its Mayor, the City Aldermen, the City Clerk, the Board of Commissioners of the City, and the County Clerk and Collector of Clay county, in which county the City of Rector is situated, praying that ordinances 212 and 213 be declared void, and that the defendants be enjoined from constructing the proposed plant, the issue and sale of said bonds, and the collection of the taxes to pay therefor.
The plaintiff brought this suit as a taxpayer of the City of Rector, to enjoin what is alleged to be an illegal attempt to collect taxes upon its property. Certain citizens intervened, joining in the plaintiff's prayer for relief. The interventions were dismissed along with plaintiff's complaint as being without equity, and the interveners have not appealed, but the plaintiff power company has.
The answer denied that a Board of Light Commissioners had been constituted and that allegation is not denied. The complaint and the answer, together with the exhibits to both pleadings and the testimony in the case, raises the issues which we shall discuss.
The complaint alleges that the electors were misled by the recitals of the ordinance, the notice of the election and the ballot title, to believe that the plant could be erected at a cost not to exceed $65,000, whereas its cost would be more than twice that amount, and that the Council had caused no estimate of cost to be made when ordinance 212 was passed.
It is conceded that no estimate of cost had been made before ordinance 212 was passed. The Mayor was asked: "You knew when ordinance 212 was passed that the plant *Page 654 
could not be built for $65,000, did you not?" And he answered: "At no time have we attempted to establish that. The $65,000 was used because it was the amount of taxable bonds we were able to vote."
It is strenuously denied that there was any attempt to deceive the electors or that they had been deceived. Testimony was offered that the matter had been discussed not only in the sessions of the City Council, but by the citizens generally and at a mass meeting held the night before the election when it was explained that while the plant could not be erected out of the proceeds of the bond sales, it was planned to issue revenue bonds in an amount sufficient, with the $65,000 which the electors were asked to authorize to construct the plant and distributing system.
Notwithstanding all this, the fact is undisputed that nowhere in the title of the ordinance, in the preamble thereof, or in the body thereof, or in the proposition to be voted on in the ballot, or in the notice of the election, is there anything to indicate that the bond issue was to partially construct an electric light plant and distributing system, or merely to contribute to the cost thereof.
On the contrary, the language used was to "build and construct a light plant and to provide a distributing system therefor."
It is to the sources just mentioned that the electors had the right to look to ascertain what they were asked to approve, and not to discussions in the Council meetings, or to street conversations, or to speeches made at a mass meeting which may or may not have been largely attended. Neal v. Morrilton, 192 Ark. 450, 92 S.W.2d 208; Phillips v. Rothrock, 194 Ark. 945, 110 S.W.2d 26.
The ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer, and we think its implication and ordinary meaning is that it was proposed to construct the plant with the proceeds of the bond sale. There is no intimation that the proceeds of *Page 655 
the bonds were intended merely to supplement other sources of revenue.
In the case of Hoffman v. Kline, 300 Pa. 485,150 A. 889, the Supreme Court of Pennsylvania said: "`Where ordinary words are used in the Constitution, they must be construed in their popular and general sense, as the people who voted for it would understand them.' This principle is particularly applicable in the present case. There are no express words or sentences in the entire section which invest the term `construction' with other than its general, popular meaning, such as is ordinarily given to it by the people at large, by architects, and by those engaged in building enterprises. The standard dictionaries unite in defining the word `construct' as `to build,' `to erect,' `to make,' in the sense of to create; and the term `construction' they define as the act of constructing or making a completed structure."
In opposition to the relief which the taxpayer seeks, that is that the levy of the tax be enjoined, it is urged that the plan of the Council is to issue revenue bonds and that the proceeds of the sale thereof, together with the proceeds of the sale of the $65,000 bond issue, will suffice to construct the proposed plant. This may be true and we assume that it is, but the question here presented is that of the validity of the $65,000 bond issue.
We do not mean to hold, and we are not holding, that the proceeds of the bond issue, authorized by the electors, must alone suffice to build the light plant, and cannot be supplemented by federal grant, or the issue of revenue bonds or otherwise. We held to the contrary in the case of Rhodes v. City of Stuttgart, 192 Ark. 822, 95 S.W.2d 101. There a bond issue was upheld for certain street improvements which admittedly was insufficient to pay the cost thereof, but the bonds were voted to be used in connection with a donation of the Federal Government through the P.W.A. agency, of which the electors were advised when they voted for the bond issue. So here, had the electors been advised that they were voting for a supplementary source of revenue, it would not defeat the *Page 656 
bond issue because the issue of itself would be insufficient to erect the plant, but the electors had the right to be correctly advised as to the Council's plans. It is readily conceivable that the electors might consent to the erection of a plant costing only $65,000 and yet be unwilling to consent to the erection of a plant costing much more, for the reason, if for no other, that the light rates would be influenced, if not controlled, by the cost of the plant producing the required electricity.
The subject of the "Statement regarding cost of proposed public improvement in ballot for special election in that regard" is annotated in the case of Drenning v. Topeka, 117 A.L.R. 894. The annotator summarizes his review of the cases cited with these statements: Independently of statutory provisions or inferences, there is no requirement that ballots used in special election with reference to a proposed public improvement shall state the cost or the estimated cost of the improvement. But the cases cited in the note are to the further effect as summarized by the annotator that the ballots used in a special election with reference to a public improvement must not be misleading in any statement or implication as to total costs. And further that the cost of the proposed public improvement as stated in ballots used in a special election in reference thereto is a limitation upon subsequent official acts based upon a favorable vote. This statement accords with our holding in the case of Cisco v. Caudle, 210 Ark. 1006, 198 S.W.2d 992.
The right of appellant, a foreign corporation, to maintain this suit is questioned. But this is a taxpayer's suit, brought to enjoin the imposition of what is alleged to be an illegal exaction. Appellant is a taxpayer on property in the city, which will be subject to the tax, if it is imposed, and the suit is authorized by 13 of Art. XVI of the Constitution. In the case of McCarroll, Commissioner, v. Gregory-Robinson-Speas, Inc., 198 Ark. 235,129 S.W.2d 254, 122 A.L.R. 977, it was said: "We are of the opinion, therefore, that an individual has the right to go into a court of equity to enjoin the enforcement of any illegal tax or exaction and that this same right inures *Page 657 
to the corporation, appellee, in the instant case, since a corporation is a person within the meaning of the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States."
It follows from what has been said that an illegal exaction is being imposed upon the property within the City of Rector, and the decree from which is this appeal is therefore reversed, and the cause remanded with directions to enjoin the collection of the proposed tax.