**VanTRAN ELECTRIC CORPORATION, Appellant,**

v.

**Mark THOMAS, Appellee.**

**No. 10–85–227–CV.**

Court of Appeals of Texas, Waco.

March 6, 1986.

Rehearing Denied April 10, 1986.

perpetual care cemetery.

Gerald Tockman, and Joshua A. Kransberg, Tockman, Laderman & Wolk, St. Louis, Aubrey R. Williams, Pakis, Cherry, Beard & Giotes, Inc., Waco, for appellant.

Raymond T. Palladino, and Ben Selman, Waco, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant VanTran Electric Corporation from judgment of $55,000 for plaintiff Thomas in a suit for damages allegedly suffered as a result of being discharged from his job after filing a worker's compensation claim (in violation of Article 8307c V.A.T.S.).

Plaintiff Thomas sued defendant Van-Tran alleging that plaintiff had been employed by defendant for 1 year and 7 months; that on March 18, 1983, plaintiff suffered an occupational injury to his back which was the producing cause of compensable disability within the meaning of the Workers' Compensation Act; that on March 22, 1983, plaintiff, in good faith, filed a claim for compensation with the Industrial Accident Board; that following the filing of the claim defendant, in retaliation for plaintiff's filing of the claim, discharged plaintiff from defendant's employ; that plaintiff was making $14,248 per year with a probability of advancement; that as a result of his discharge plaintiff was damaged $55,000; that defendant has refused to pay plaintiff wages admitted to be due of $440 unless he signs a resignation; that defendant acted with vindictiveness and maliciousness for which plaintiff seeks exemplary damages of $20,000.

Trial was to a jury which found:

(1) VanTran discharged plaintiff because he, in good faith, filed a claim under the Workers' Compensation Act.

## 529

(2) VanTran discharged plaintiff because he hired an attorney to represent him in a worker's compensation claim.

(3) VanTran discharged plaintiff because he instituted, in good faith, a proceeding under the Workers' Compensation Act.

(4) $25,000 represents the reasonable value of wages and other benefits of employment lost by plaintiff up to time of the trial as a direct result of his discharge.

(5) $25,000 represents the reasonable value of wages and other benefits of employment lost in the future by plaintiff as a direct result of his discharge.

(6) The action of VanTran in discharging plaintiff was a willful, malicious act.

(7) $5,000 should be awarded plaintiff against VanTran as exemplary damages.

The trial court rendered judgment on the verdict for plaintiff in the amount of $55,-000. Defendant appeals on 3 points.

Point 1 asserts "the court erred in entering judgment in accordance with the verdict for the reason that no legally sufficient evidence supports the finding that defendant discharged plaintiff in violation of Article 8307c".

Point 2 asserts "the trial court erred in entering judgment in accordance with the verdict because no legally sufficient evidence supports the jury's award of damages for past or future lost wages".

Article 8307c provides:

Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas [Workers'] Compensation Act, or has testified or is about to testify in any such proceeding.

Section 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

\* \* \* \* \* \*

Plaintiff was hired by defendant in August 1981 as a painter and an assembler at $3.75 per hour. He was moved around in the plant and received several raises in pay. Plaintiff was making $4.85 per hour on March 18, 1983, plus a production bonus. A production bonus was paid if the plant turned out a certain amount of work and, in plaintiff's case, a raise as high as $60/$78 per week (one week being $92). Plaintiff also had vacation and sick leave pay plus $500 per year profit sharing, to be paid after 10 years, when the employee retired or became disabled to work; plus a 45¢ per hour cost of living adjustment each year.

On March 18, 1983, plaintiff was breaking the boards on a trailer when the floor gave way and plaintiff fell through the bottom and onto the concrete. An ambulance was called which carried plaintiff to Hillcrest Hospital Emergency Room where he was given a shot in the spine, put on 7 days of medication; told to go home and get bed rest; and was told to come back if he had further problems. The next day (March 19) plaintiff's back was hurting and he went back to the hospital emergency room where Dr. Stockton gave him a shot and told him to come to his office on Monday (March 21). On Monday plaintiff called his supervisor, Mr. Waterman (defendant's Vice-President), and told him he could not come to work because his back was bothering him "really bad", and then he went to Dr. Stockton's office. Dr. Stockton examined him and found that he had a ruptured disc and put him on Robaxin and Darvocet. Dr. Stockton told plaintiff to come back on Thursday (March 24).

On March 22 plaintiff had to go back to the hospital emergency room because his back was paining him where he was given a shot in the spine, and he was given medication (100 pills] to be taken 4 times each day. On Wednesday March 23 plaintiff's wife called Mr. Waterman and told him that plaintiff's back was still bothering him and he was going back to the doctor on March 24. On March 24 plaintiff called Mr. Waterman and told him he was going to see Dr. Stockton, and plaintiff testified that Waterman told him he had already received a report from Dr. Stockton's office and [plaintiff's] attorney and he knew that he had filed a "workman's comp"; that Waterman was furious and real upset and said, "Mark, I thought you were going to come back and work for us. If you're intending to come back to work, why did you go and file a workman's comp? When you filed on workman's comp, we're going to punish you and I'm going to see to it personally that you never get a job anywhere else". Plaintiff testified he told Mr. Waterman that he had a ruptured disc; that Mr. Waterman told him that he had terminated him on March 25 and again on March 31; that he asked Mr. Waterman if he could pick up his check and Mr. Waterman said, yes, if plaintiff voluntarily resigned and signed a resignation; that the only reason Mr. Waterman gave for firing him was that he had been absent 3 days without notification.

Plaintiff continued to be treated by Dr. Stockton until February 21, 1984, at which time he was released to work. Plaintiff testified that in April 1983 he called the plant and talked with Mr. Waterman who told him if he dropped the "comp" case he would take me back, and if I signed the resignation slip he would take me back. Plaintiff signed up for unemployment compensation with TEC and Mr. Waterman opposed plaintiff's claim and told TEC that plaintiff was discharged for misconduct.

Prior to plaintiff's injury he had received at least 3 written evaluations of his work, and pay raises. The evaluations of his work reflected his work performance, attitude, initiative, ability to learn and to fol-low instructions, to be good, his attendance to be fair (on a scale of good, fair and poor), and plaintiff's last pay raise was given to him 30 days prior to his injury. Plaintiff testified that, if he had continued to work at VanTran, he would have been making $5.70 per hour plus a production bonus at the end of 1983; that had he continued working from March 18, 1983 to December 1983, his wages would have amounted to $7,100; with the production bonus, they would have been $8,050; and, with cost of living adjustment, his wages would have been $8,815; that from April to June 1984 he would have received $3,000; from July through September he would have received $3,336; and for the whole year of 1984, he would have received a total of $13,636.

Plaintiff was unable to get out of bed and sent his brother-in-law for his check, but VanTran would not give him the check; and Mr. Waterman testified that the check was still in VanTran's file, and that plaintiff could have it. Plaintiff, at the time of trial, was working as a bus driver for Waco schools and receiving $108 every 2 weeks.

Plaintiff got a job at Time Manufacturing Company but, before he went to work, Mr. Waterman called Time and told them that plaintiff had suffered a back problem and was totally disabled to work, and had filed a lawsuit against VanTran.

Mr. Waterman told plaintiff "not to put VanTran down as a reference because he was going to tell everybody about me hiring a lawyer and filing a workman's comp". Mr. Waterman, Vice-President of VanTran, testified that he knew of plaintiff's injury on March 18, and knew the ambulance carried plaintiff to the hospital; that he knew the doctor said he injured his back; that he talked with plaintiff's wife by telephone on March 23 who said that plaintiff was going to the doctor on March 24. He also testified that plaintiff had never been given a written warning regarding absenteeism; that the reason he terminated plaintiff was his 3-day absence without notification to VanTran; that he terminated plaintiff on

April 1; that he did not put the $X$ in the block for voluntary resignation on the termination form which he wanted plaintiff to sign before he could receive his last check; that he did not separate plaintiff for misconduct; that plaintiff was rated good on evaluation sheets and recommended for retention and for a pay raise; that he did appear before TEC in opposition to plaintiff receiving unemployment benefits; Mr. Waterman further testified that he has had plaintiff's last check in his file for more than 2 years—that plaintiff did not seem too concerned about getting it; that he tried to knock out plaintiff's worker's compensation claim because he did not think that plaintiff was entitled to it; that he made the claim at one time that he did not think plaintiff was hurt on the job; that plaintiff had been absent 17 times from work between August 1981 and December 1981; that an injured employee cannot come back to work unless he has a release from the doctor, and that plaintiff was still under the doctor's care on April 1 with no release to return to work.

Steve Parke, an official at VanTran, testified, in effect, that the company would have no reason to terminate plaintiff on April 1, and 7 days prior to such date for a 3-day unexcused absence without notification, as plaintiff was still under the doctor's care for his injury. He further testified that as far as he was concerned plaintiff's absence after April 8 was related to a compensation injury; that it is to the company's best interest to see that compensation claims are kept to a minimum; that he did not recommend to Mr. Waterman that plaintiff be discharged because he had filed a compensation claim.

Mr. Strickland, production foreman at VanTran, testified that plaintiff was not a dependable person, or dependable as far as being present for work, but that he evaluated plaintiff three different times and reported "employee will work out satisfactorily"; and that there is not a single reason in VanTran's file on plaintiff that would constitute a basis for discharge.

█ VanTran placed 2 separation notices in its files on plaintiff. The first, dated March 25, 1983, shows plaintiff made a voluntary resignation by a check mark, and included the following statements written in Mr. Waterman's handwriting: "Mark was released to return to work on March 21 by the hospital when he was examined on March 18. On March 21 he said he was going to the doctor on Tuesday. On Wednesday his wife called and said he didn't go Tuesday but was going Thursday. Today Mark sent someone after his check and he didn't know what the matter with Mark was. I assume Mark was released by the hospital and he has not brought in anything saying there is something wrong with him; he does not wish to work here". The second separation notice is dated April 28, 1983, and also has a voluntary resignation checked. Neither is signed by the plaintiff. We think there is evidence to support the jury's findings in answers to Issues 1, 2 and 3, and that such findings are not against the great weight and preponderance of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952); and we think there is legally sufficient evidence to support the jury's award of damages in Issues 4 and 5.

Points 1 and 2 are overruled.

█ Point 3 asserts "the court erred in overruling defendant's objection to the submission of Issues 6 and 7 regarding exemplary damages because Article 8307c does not authorize the award of exemplary damages".

As noted earlier, Article 8307c, Section 2, authorizes the award of "reasonable damages". It does not restrict such award to "actual damages". *Sabine Pilot Service, Inc. v. Hauck*, S.Ct. Tex., 687 S.W.2d 733, 736 (1985).

Point 3 is overruled.

AFFIRMED.