The Honorable Dennis Young State Representative Post Office Box 1835 Texarkana, Arkansas 75504
Dear Representative Young:
This is in response to your request, made on behalf of Dr. L.H. Nix, Superintendent of the Fouke Public Schools, for an opinion on two questions regarding the application of proceeds of a school bond issue.
Documents enclosed with the request indicate that the voters of the Fouke School District approved in 1994 a millage increase presented on the ballot in relevant part as follows:
 The 8.0 new debt service mills plus the existing 15.9 debt service mills, which will continue after retirement of the bonds to which now pledged, will be a continuing debt service tax until the retirement of proposed bonds to be issued in the principal amount of $2,800,000 and which will mature over a period of 30 years and will be issued for the purpose of refunding outstanding bonded indebtedness, erecting and equipping a new high school, and refurbishing, remodeling, paving and equipping existing school facilities. Surplus revenues produced each year by debt service millage may be used by the District for other school purposes.
Dr. Nix's inquiries are as follows:
 1. Because of the wording on the ballot, is it legal to include the gymnasium, band, and choir areas in the building project?
 2. Since there is not enough money to construct the entire project as proposed, does the order of the items on the ballot determine the order in which they must be done?
I assume the first inquiry is prompted by a concern that the words "a new high school" may not be sufficiently specific to inform the voters that a gymnasium and band and choir areas would be included in the project. In my opinion, however, those facilities may legally be included in the project.
School district bonds are issued under authority of A.C.A. §§ 6-20-1201 to -1228 (Repl. 1993, Cum. Supp. 1993, and Pamp. 1995). Arkansas Code Annotated § 6-20-1201 (Pamp. 1995) provides that school districts may issue bonds "for the building and equipment of school buildings" among other purposes. The Supreme Court of Arkansas has expressly held that this language permits the application of school bond proceeds to the construction of a gymnasium, stating that the words "mean any such school district buildings as may be needful, necessary or proper for the conduct of a school in said district." Young v. Linwood School Dist. No. 17,193 Ark. 82, 83, 97 S.W.2d 627 (1936). The court also stated: "We think it just as important that children should be developed physically and morally as it is that they should be developed mentally." Young,193 Ark. at 85. See also Gibson v. State Bd. of Educ., 201 Ark. 1165,148 S.W.2d 329 (1941). In my opinion, Young is controlling here with respect to the contemplated gymnasium, and it is highly likely that the court would reach the same conclusion if presented with a question about the musical development of children.
School district bonds need not be approved by the voters. See A.C.A. §§6-20-1201 to -1228; Op. Att'y Gen. 94-344. There is no indication that the voters approved the issuance of the bonds here; rather, they approved the millage increase, which approval was required under Ark. Const. art. 14, § 3, and A.C.A. § 26-80-102. It might be argued therefore that the words of the ballot are not controlling upon the question of the uses to which the bond proceeds may be put, but only upon the question of the uses to which the tax revenues may be put.[1] Because, however, the application of funds arising from the increased millage to the payment of the bonds might fairly be characterized as the indirect application of such tax proceeds to the building project (see Hasha v. City ofFayetteville, 311 Ark. 460, 845 S.W.2d 500 (1993); Pledger v. Cutrell,189 Ark. 562, 74 S.W.2d 646 (1934)), I assume that any constitutional or statutory limitations upon the application of school tax proceeds also apply, in this instance, to the district's application of the bond proceeds.
In my opinion, no constitutional or statutory provisions operate to prohibit the application of funds arising from the millage increase to the construction of a gymnasium and band and choir areas. Arkansas Const. art. 14, § 3, permits school districts to impose taxes for "the erection and equipment of school buildings" and for other purposes, and also prohibits the application of school tax funds for a purpose other than that for which it was levied.[2] The Supreme Court of Arkansas has held that these constitutional provisions are not violated by a district's use of tax money to pay an assessment of a local improvement district.Rainwater v. Haynes, 244 Ark. 1191, 428 S.W.2d 254 (1968). The court there stated:
 [I]t seems clear that any use of those [school] funds raised from taxation that results in benefits to [school] funds or property or aids in the stated purposes for which these funds may be expended would not be an unconstitutional diversion. The benefits to be derived by school districts in performing their functions by construction of streets, sewers, water systems, electrical distribution systems, drains, levees, and other improvements which may be undertaken through improvement districts seem obvious. Certainly, direct expenditures by school districts for such improvements for its own use and benefit would not be considered diversion of school funds. There is no reason why the distribution of the financial burden proportionately among a number of properties so benefited should make it so.
Rainwater, 244 Ark. at 1195-1196.
The court has also held, in several other cases involving the use of school funds or property for purposes arguably not strictly within the enabling language of Ark. Const. art. 14, § 2 or § 3, that such uses were nonetheless legitimate. See, e.g., Magnolia School Dist. No. 14 v.Arkansas State Bd. of Educ., 303 Ark. 666, 799 S.W.2d 791 (1990) (payment of certain federally mandated costs of desegregation cases and related attorney's fees); Strawn v. Campbell, 226 Ark. 449, 291 S.W.2d 508 (1956) (payment of property appraisers in aid of tax collection); Board of Educ.of Lonoke County v. Lonoke County, 181 Ark. 1046, 29 S.W.2d 268 (1930) (payment of attorney's fees for recovery of school funds); County Bd. ofEduc. v. Austin, 169 Ark. 436, 276 S.W. 2 (1925) (payment of portions of salaries of county collector and treasurer). In my opinion, a district's construction and equipping of a gymnasium and band and choir areas are well within the permissible purposes for taxation set forth in Ark. Const. art. 14, § 3, and A.C.A. § 26-80-102(a).
With respect to the degree of detail required in a school tax election ballot, it has been held that such a ballot is not invalid for omitting a fact that, if included, would have been too insignificant to change anyone's vote, Bates v. Orr, 236 Ark. 499, 367 S.W.2d 122 (1963), and that such a ballot is not invalid unless it could have misled the voters, Lakeside School Dist. of Chicot County v. Gaines, 202 Ark. 778,153 S.W.2d 149 (1941). There is authority generally to the effect that a court will consider the ordinary meaning of the words used in a ballot to determine if it adequately describes the authority the voters are asked to confer. Arkansas-Missouri Power Corp. v. City of Rector,214 Ark. 649, 217 S.W.2d 335 (1949). It is my opinion that the inclusion of an express statement that a gymnasium and music areas would be included in the new high school likely would not have changed any voter's decision on the question, that the language of the ballot was not misleading for failure to mention such facilities, and that a statement that tax proceeds will be used to erect and equip a new high school is adequate to inform any reasonable voter that facilities for physical and music education likely would be included therein. I am, accordingly, of the opinion that the ballot used here was adequate to permit the contemplated facilities to be included in the new high school.
With respect to the second question, I am unaware of any constitutional or statutory provision that would require the district to expend the proceeds of the bonds for the purposes set forth on the ballot in the order specified therein. It is accordingly my opinion that the answer to the second question is "no."
The statement in the second question that "there is not enough money to construct the entire project as proposed" suggests, however, a line of cases involving illegal exaction, of which you should be aware.
In Hasha v. City of Fayetteville, 311 Ark. 460, 845 S.W.2d 500 (1993), city voters approved a sales tax, revenues from which were to be used to pay bonds, also approved by the voters, the proceeds of which were to be used to construct capital improvements for a school district. Because of doubts about the legality of the plan, the city never issued the bonds. Later, the voters approved a bond issue for capital improvements for the city, but the tax was not resubmitted to a vote. The capital improvement bonds were thereafter issued. The court, stating that the bonds to benefit the school district were a "primary purpose" of the tax, held that the city's continued collection of the tax, after it was determined that bonds to benefit the school district could not be issued, was an illegal exaction.
Hartwick v. Thorne, 300 Ark. 502, 780 S.W.2d 531(1989), involved a city bond issue the proceeds of which were to be applied, in part, to the construction of a drainage canal. After the bonds were issued, it was determined that completion of the canal was not feasible. The city desired to apply the portion of the bond proceeds earmarked for canal construction for other street improvement purposes (the general purpose of the entire bond issue), but the court held that that portion of the proceeds constituted an illegal exaction that must be refunded. It should be noted that the court's decision affirmed the judgment of the chancellor, and the majority opinion quoted approvingly from the chancellor's opinion:
 If bond money is raised for purposes A, B, and C, it is unconstitutional for the money to be used only for purposes A and B. Those voting in favor of the bond issue solely or primarily because of the designated use provided for by purpose C are misled.
Hartwick, 300 Ark. at 506 (emphasis in original).
In Arkansas-Missouri Power Corp. v. City of Rector, 214 Ark. 649,217 S.W.2d 335 (1949), voters approved the issuance of $65,000 in bonds to build a municipal electric generating station and distribution system. City officials were aware, prior to the election, that the station and distribution system would cost more than $65,000, but the ballot was phrased in such a way as arguably to suggest that the bond proceeds would be sufficient. The court held that the tax imposed to provide payment of the bonds was an illegal exaction and enjoined its collection.
These cases appear to stand for the proposition that when a purpose, or at least a "primary purpose," of a contemplated or actual bond issue cannot be accomplished, the tax that supports the bonds constitutes an illegal exaction. Rector seems to be the case with facts most similar to those at issue here because it involved a situation where bond proceeds were insufficient to accomplish what was, there, the only purpose of the bond issue. In Hasha and Hartwick, funds were available, but the purposes failed for other reasons.
Of course, Rector might be distinguished from the case at hand. There, no portion of the purposes of the bond issue could be completed with the proceeds available. It is my understanding that, here, the refunding has been completed and a new high school will be built, but there may remain little or no money for the refurbishing and remodeling portions of the contemplated uses of the proceeds. I also understand that the latter are relatively minor in proportion to the total amount of the bond issue. It may be that the contemplated refurbishing and remodeling are not a "primary purpose" of the bond issuance.
A court considering an illegal exaction claim based upon an alleged failure of a purpose of the bond issue would likely examine all of the relevant facts and circumstances. As there are likely many relevant facts and circumstances of which I am unaware, I am unable to provide you a definitive opinion on whether an illegal exaction would be deemed to have occurred if, for example, the district ultimately applies all of the bond proceeds to the refunding and the construction of the new high school, or follows some other course of action. It is my view in general, however, that it is least likely that an illegal exaction would be held to have occurred if the district applies at least some portion of the bond proceeds to each of the three purposes stated on the ballot.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] I assume that funds arising from the millage increase will, as stated on the ballot, be used to pay debt service on the bonds and, with respect to any annual surplus, for other school purposes. These uses are, of course, entirely legitimate. See Ark. Const. art. 14, § 3; A.C.A. § 28-80-102(a).
[2] Arkansas Code Annotated § 26-80-102(a) provides that school taxes may be imposed "for the support of the schools in the district. . . ."