William Randal Wright, Prosecuting Attorney Eighth Judicial District North Post Office Box 1022 Hope, AR 71802-1022
Dear Mr. Wright:
I am writing in response to your request for my opinion on the following question:
 In light of Hempstead County Ordinances Nos. 1992-10 and 1995-16, as well as the language of the 1992 ballot title authorizing issuance of a local sales and use tax for the purpose of operating and maintaining the county detention facility, can Hempstead County construct additional improvements on the detention facility site to hold evidence and to meet other law enforcement purposes?
You report the following facts:
 I enclose copies of Hempstead County Ordinance No. 1992-10, Hempstead County Ordinance No. 1995, and Ballot Title of January 28, 1992. This is in reference to the taxpayers of Hempstead County authorizing the issuance of a sales and use tax bonds [sic] for the purpose of financing the costs of constructing a detention facility in Hempstead County and for also operating said jail facility and other improvements. At this point in time, the jail has been built and is operating. The bonds have been paid in full. There is no debt left on the detention facility.
The tax authorization, approved by the voters pursuant to Ark. Const. amend. 62 in the 1992 special election,[1] reads as follows:
 FOR adoption of a ½% local sales and use tax within Hempstead County, Arkansas for the purpose of operating and maintaining jail facilities, including related law enforcement, administrative and parking improvements for or within such facilities, now or hereafter existing, and/or securing the payment of any capital improvement bonds issue by Hempstead County for jail facilities, including related law enforcement, administrative and parking improvements for or within such facilities . . .
The voters also approved the referenced capital improvement bond issue, which was presented on the ballot as follows:
 FOR an issue of bonds of Hempstead County in the maximum principal amount of $2,500,000 to finance the acquisition, construction and equipping of new jail facilities, including law enforcement, administrative and parking improvements for or within such facilities, and, in order to secure the bonds, the pledge of up to 100%, as determined by the Quorum Court, of the ½% sales and use tax levied by Hempstead County if such tax is approved by the voters at the special election. . . .
Ordinance No. 1992-10 authorized the issuance of Hempstead County, Arkansas Sales and Use Tax Bonds, Series 1992, in the amount of $2,500,000 "for the purpose of financing the costs of county jail facilities, paying necessary expenses incidental thereto, and paying expenses of authorizing and issuing the bonds." The ordinance further pledged the tax collections for payment of the bonds. Ordinance No. 1995-16 amended the previous ordinance by increasing the amount of monthly tax revenues that might be devoted to operation and maintenance of the jail, as opposed to debt service.
RESPONSE
In my opinion, it would be impermissible for Hempstead County, without voter approval, to put the tax revenues at issue to any use other than "operating and maintaining jail facilities, including related law enforcement administrative and parking improvements for or within such facilities." Only a finder of fact could determine whether using the tax revenues to construct the proposed improvements referenced in your request would be consistent with the uses authorized by the voters.
Section 1(a) of Ark. Const. amend. 62 provides in pertinent part:
 The legislative body of a municipality or county, with the consent of a majority of the qualified electors voting on the question at an election called for that purpose, may authorize the issuance of bonds . . . for capital improvements of a public nature . . . in amounts approved by a majority of those voting on the question. . . . If more than one purpose is proposed, each shall be stated separately on the ballot.
Article 16, § 11 of the constitution further provides in pertinent part that "no moneys arising from a tax levied for one purpose shall be used for any other purpose." See also A.C.A. § 14-58 — 203(b)(1) ("Funds resulting from taxes levied under statutes or ordinances for specific purposes may not be diverted to another purpose."); Hartwick v. Thorne,300 Ark. 502, 506, 708 S.W.2d 531 (1989) (same).
At issue in your request is whether the use of tax revenues to "construct additional improvements on the detention facility site for purposes of holding evidence and for other law enforcement purposes" has been authorized by the voters in approving, and the city council in levying, the tax. In Ark. Op. Att'y Gen. No. 98-189, which addressed a similar question regarding the use of tax revenues, my predecessor summarized as follows the appropriate analytical approach in considering a question of this sort:
 It is my opinion that the answer to this question will depend entirely upon the language of the ordinance by which the one cent sales tax was levied and the ballot title by which it was presented to the electorate. The Arkansas Supreme Court has stated:
 [I]t is to the title of the ordinance and the ballot title" that the electors had the right to look to ascertain what they were asked to approve[.]"
 Daniel v. Jones, 332 Ark. [489, 501, 966] S.W.2d [226] (April 9, 1998), quoting Arkansas-Missouri Power Corp. v. City of Rector, 214 Ark. 649, 654, 217 S.W.2d 335, 337 (1949). The court went on to state that "[t]he ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer[.]"
 Accordingly, the purpose of the tax, as stated in the ordinance and the ballot title will be determinative of the manner in which the proceeds may be used.
As the court noted in Maas v. City of Mountain Home, 338 Ark. 202, 208,992 S.W.2d 105 (1999): "The ballot is the `final word' to the voters only in the sense that it is the last source of information, not in the sense that it is conclusive of the measure's effects. It must be read in conjunction with the levying ordinance." Only in instances when the voters' intent is ambiguous should a court resort to extrinsic evidence to determine whether a particular use of tax revenues is authorized. SeeArkansas State Highway Commission v. Mabry, 229 Ark. 261, 315 S.W.2d 900
(1958); Mears v. Arkansas State Hospital, 265 Ark. 844, 581 S.W.2d 339
(1979); Ark. Op. Att'y Gen. No. 97-260.
In considering the two ballot measures set forth above, I am struck by several things. First, the measure authorizing the bond issue pledges the bond revenues exclusively to "the acquisition, construction and equipping of new jail facilities." Second, in authorizing the quorum court to pledge "up to 100%" of tax revenues as collateral on the bonds, the measure acknowledges that a portion of the tax revenues might be put to some other purpose than debt service. The measure authorizing the tax clearly identifies that additional purpose as being "operating and maintaining jail facilities, including related law enforcement administrative and parking improvements for or within such facilities." In accordance with these measures, both ordinances mandate using the tax revenues for the dual purposes of collateralizing the bonds and maintaining and operating the jail facilities.
The clear question, it seems to me, is whether "construct[ing] additional improvements on the detention facility site to hold evidence and to meet other law enforcement purposes," as Hempstead County proposes to do, would qualify as "related law enforcement administrative and parking improvements for and within" the jail. This question is ultimately one of fact that I am neither authorized nor equipped to address. To the extent that the authorities need a place to store contraband seized incident to arrest, a finder of fact might conclude that the construction of "additional improvements on the detention facility site to hold evidence" was sufficiently "related" to the operation of the jail to fall within the permissible range of expenditures authorized by the voters. As for the other proposed expenditures to advance "law enforcement purposes," a finder of fact could adjuge their propriety only on a case-by-case basis. I can only opine that such expenditures would be appropriate only if they were "related" to the operation of the jail.
You represent that although the bonds have now been retired, the tax continues to generate revenues sufficient not only to operate, maintain and support the jail as specified in the ballot measure, but also to service the since retired debt. Under these circumstances, it appears that tax revenues would inevitably accumulate. In my opinion, although the county might treat such accumulated revenues as a reserve fund available for the exclusive uses set forth in the ballot measure, any use of these revenues for a purpose other than one sufficiently "related" to the operation of the jail would constitute an illegal exaction. SeeDaniel v. Jones, 332 Ark. 489, 966 S.W.2d 226 (1998). Moreover, should the tax revenues accumulate to a point where they might not reasonably be characterized as a reserve to meet operational and "related" jail expenses, a citizen might in theory seek a refund pursuant to Ark. Const. art. 16, § 13 of the surplus exceeding a reasonable reserve. SeeBell v. Crawford Co., 287 Ark. 251, 255, 697 S.W.2d 910 (1985) (T]he taxpayers, in instances of bond surpluses accumulating as a result of the retirement of the original bond issue, are entitled to a refund.");accord Hartwick, 300 Ark. at 509. However, nothing would preclude the county from seeking voter authorization to put the accumulated surplus to some other designated use or to reclassify the surplus as general revenues. See Hooker v. Parkin; Ark. Op. Att'y Gen. Nos. 97-146 and 96-136 (opining that surplus tax revenues accruing after retirement of jail bonds could be diverted to general revenues upon approval by the people).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] For the legislation enabling Amendment 62, see title 14, chapter 164, subchapter 3 of the Arkansas Code.