The Honorable Sue Madison State Senator 573 Rock Cliff Road Fayetteville, AR 72701-3809
Dear Senator Madison:
I am writing in response to your request for my response to two questions I will paraphrase as follows:
 1. May the City of Fayetteville use proceeds from passage of a Street Improvement Bond to pay for bicycle lanes (which sometimes are referred to as "bicycle trails" or "bicycle paths")?
 2. If the answer to Question One is "yes," must those bicycle lanes be part of the paved roadway or may they be separated from the roadway?
You report the following background facts:
 In September of 2006, Fayetteville voters were asked to consider 4 questions regarding the sale of bonds for City improvements. Questions three and four dealt with street improvements and trail improvements, respectively. These ballot questions are copied below with my emphasis added:
 Question three There is submitted to the qualified electors of the City of Fayetteville, Arkansas, the question of the issuance of capital improvement bonds in principal amount not to exceed $65,900,000 (the "Street Improvement *Page 2 
Bonds") pursuant to the Local Government Bond Act for the purpose of financing all or a portion of the costs of acquisition, construction and equipping of certain street improvements. If the issuance of the Street Improvement Bonds is approved, the Street Improvement Bonds shall be secured by a pledge of and lien upon (i) all of the receipts of the 0.25% Sales and Use Tax and (ii) all of the receipts of the 0.75% Sales and Use Tax, each levied pursuant to the Local Government Bond Act.
 FOR the issuance of Street Improvement Bonds in principal amount not to exceed $65,900,000 for the purpose of financing all or a portion of the costs of acquisition, construction, reconstruction, repair, straightening and widening of certain City streets, which may include related sidewalk, traffic signal and control, curbing, guttering and drainage improvements and right-of-way acquisition.
 * * * Question four There is submitted to the qualified electors of the City of Fayetteville, Arkansas, the question of the issuance of capital improvement bonds in principal amount not to exceed $2,100,000 (the "Trail Improvement Bonds") pursuant to the Local Government Bond Act for the purpose of financing all or a portion of the costs of acquisition, construction and equipping of certain City trail system improvements. If the issuance of the Trail Improvement Bonds is approved, the Trail Improvement Bonds shall be secured by a pledge of and lien upon (i) all of the receipts of the 0.25% Sales and Use Tax and (ii) all of the receipts of the 0.75% Sales and Use Tax, each levied pursuant to the Local Government Bond Act.
 FOR the issuance of Trail Improvement Bonds in principal amount not to exceed $2,100,000 for the purpose of financing all or a portion of the costs of acquisition and construction of certain City trail system improvements, *Page 3 which may include related pedestrian signal and drainage improvements and right-of-way acquisition.
 * * * Many of our citizens in voting for Question three may have assumed the proceeds would pay only for streets and sidewalks and associated curbs, signs or signals. Similarly those voting for Question four may have assumed the proceeds of its passage would pay for alternative transportation modes such as pedestrian pathways or bicycle lanes since that was a separate ballot question.
RESPONSE
Without access to the factual circumstances regarding what the voters may have intended in approving these ballot measures, I am unable to definitively answer your questions. I can and will, however, set forth the general legal standards that a court might apply in determining the voters' intent. Local counsel and, perhaps, a local court are properly situated to apply these standards based upon a review of all the pertinent facts.
Question 1: May the City of Fayetteville use proceeds from passage ofa Street Improvement Bond to pay for bicycle lanes (which sometimes arereferred to as "bicycle trails" or "bicycle paths")?
Absent some ambiguity in the texts of the levying ordinance or the ballot title, the express terms of one or both of those texts will control in determining the permissible uses of the tax revenues at issue. In the event of an ambiguity, a finder of fact might look to extrinsic evidence of the voters' intent in approving the levy. In that instance, only that finder of fact acquainted with all of the attendant circumstances could answer your question.
Your question implicates Article 16, Section 11 of the Arkansas Constitution, which provides in pertinent part that "no moneys arising from a tax levied for one purpose shall be used for any other purpose."See also Hartwick v. Thorne, 300 Ark. 502, 506, 708 S.W.2d 531 (1989). In determining the purpose of a tax, the Arkansas Supreme Court has stated: *Page 4 
 [I]t is to the title of the ordinance and the ballot title `that the electors had the right to look to ascertain what they were asked to approve[.]'
 Daniel v. Jones, 332 Ark. 489, 501, 966 S.W.2d 226 (1998), quotingArkansas-Missouri Power Corp. v. City of Rector, 214 Ark. 649, 654,217 S.W.2d 335, 337 (1949). Although the court declared in Daniel that "`[t]he ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer,'" 332 Ark. at 501 (quoting Arkansas-MissouriPower, supra), the court further declared in Maas v. City of MountainHome, 338 Ark. 202, 208, 992 S.W.2d 105 (1999): "The ballot is the `final word' to the voters only in the sense that it is the last source of information, not in the sense that it is conclusive of the measure's effects. It must be read in conjunction with the levying ordinance."
I have reviewed both the ballot title and the levying ordinance in an effort to determine the scope of the expenses authorized by the voters in approving Question Three. As noted above, this question designates the authorized expenses as being "financing all or a portion of the costs of acquisition, construction and equipping of certain street improvements . . ., which may include related sidewalk, traffic signal and control, curbing, guttering and drainage improvements and right-of-way acquisition." You indicate in your request that that the proposed expenditures are "for Bicycle Lanes (which sometimes are referred to as `Bicycle Trails' or `Bicycle Paths')." Only a finder of fact would be equipped to determine how the voters envisioned the expenditure of these funds and whether they anticipated their use for improvement of bicycle lanes, trails or paths. Accordingly, I am simply unable to opine whether the proposed improvements would fall within the parameters of Question Three. Although the reference in Question Four to "the costs of acquisition, construction and equipping of certain City trail system improvements" might have been interpreted by the voters as restricting funding of "bicycle lanes," "bicycle trails" and "bicycle paths" to Question Four revenues, I cannot opine to that effect based solely on the language of the ballot. In this regard, I should note that if the voters' intent is ambiguous, a court might resort to extrinsic evidence to determine whether a particular use of tax revenues is authorized. Cf. Arkansas State Highway Commission v. Mabry,229 Ark. 261, 315 S.W.2d 900 (1958); Mears v. Arkansas State Hospital,265 Ark. 844, 581 S.W.2d 339 (1979); Ark. Ops. Att'y Gen. Nos. 2006-199; 2004-121 and 97-260. A court might look at such factors as evidence of the historical context of the measure, contemporaneous conditions at the time of its enactment, consequences of interpretation, and other matters of common knowledge within *Page 5 
the limits of its jurisdiction in order to determine whether the voters intended to approve use of the sales tax revenues for the particular projects in question. Id. Such questions are intensely factual in nature and must be answered on the local level, perhaps with the assistance of local counsel.
Question 2: If the answer to Question One is "yes," must thosebicycle lanes be part of the paved roadway or may they be separated fromthe roadway?
As noted above, given the limited factual background I have been provided, I am unable to offer an opinion regarding your first question. For the same reason, I am unable to opine on your second question. Instinctively, it would appear that the construction or improvement of a bicycle path totally unconnected to an existing street would not constitute a "street improvement" of the sort contemplated in Question Three — an assumption reinforced by that fact that Question Four in addressing "certain City trail system improvements" would likewise appear to contemplate precisely such recreational bike lanes. However, without additional information of the sort discussed in my response to your previous question, I cannot speculate whether a bike lane directly adjacent to a street or one that parallels a street with an area of intervening vegetation would constitute a "street improvement" within the contemplation of Question Three. Again, although I do not wish to dodge the issue, I can only reiterate that questions regarding the scope of these ballot measures must be answered on the local level based upon a review of all the pertinent facts. In this regard, I will note that the Fayetteville City Attorney has offered the following analysis to a local alderman:
 State law refers to "Streets and street lighting, alleys, sidewalks, roads, bridges and viaducts, A.C.A. § 14-164-303; and expressly states this law "shall be broadly interpreted to effectuate the intent and purposes and not as a limitation of powers." A.C.A. § 14-164-304.
 State and city law both proclaim that bicyclists riding upon a highway "shall have all the rights and all of the duties applicable to the driver of a vehicle. . . ." § 73.04. Riding "two abreast" is not allowed "except on paths or parts of roadways set aside for the exclusive use of bicycles (bike lanes)." § 73.04.
 Since bicyclists may legally use the streets and are encouraged to use bike lanes in the roadway where available, these bike lanes must be *Page 6 
considered a legal part of a street and thus clearly within the definition of the street projects authorized to use the sales tax bond revenue.
I do not necessarily disagree with this analysis. However, I must again stress that the ultimate question is what the voters intended in approving these measures — a question that must be addressed by looking to the ballot, the levying ordinance and, in the event of any uncertainty, to the circumstances attending the election.
I regret that I could not be of further assistance in this matter.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1