Cite as 2019 Ark. 302

# SUPREME COURT OF ARKANSAS

No.: CV-18-992

| | |
|---|---|
| | Opinion Delivered: October 24, 2019 |
| JAMES CRAIG CARLOCK, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF PERSONS SIMILARLY SITUATED<br><div align="right">APPELLANT</div> | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BCV-14-145 ] |
| V. | HONORABLE RICHARD LUSBY JUDGE |
| THE CITY OF BLYTHEVILLE, ARKANSAS<br><div align="right">APPELLEE</div> | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

James Craig Carlock, individually and as a representative of a class of persons similarly situated, appeals from an order of the Mississippi County Circuit Court dismissing his illegal-exaction complaint against the City of Blytheville, Arkansas. He argues on appeal that the trial court should have been permitted to look beyond the wording of the enabling ordinance and ballot title in determining whether tax money is being spent for an approved purpose. He contends that case law from this court to the contrary should either be overruled or not applied in this case. We affirm.

For a period of time, the City stopped paying payroll and employment taxes to the federal government. In 2011, the Internal Revenue Service made a demand for payment of the unpaid taxes. In December 2011, the City passed an ordinance proposing a temporary

one-cent sales and use tax to be collected for fifteen months. The City passed a second ordinance calling for a special election to be held on the proposed tax on March 13, 2012.

> The ballot title for the proposed tax stated,

> The Sales and Use Tax shall be levied and the net collections received used by the City to pay and remit federal and state income tax withholdings, employer and employee FICA and Medicare payroll tax contributions, federal and state employment tax contributions, and other amounts due and payable by the City to federal and state authorities in connection therewith.

The proposed tax was approved at the special election. The tax generated $3,519,296.57 in revenue. The City paid the federal government $2,947,853.05 to settle its tax obligation. After the debt was satisfied, the City continued to collect the tax for the last two months of the fifteen-month enactment period. A total of $571,443.52 in revenue remained after the debt was satisfied. Those funds were placed in a separate account and used to pay payroll taxes.

In September 2014, Carlock filed a class-action complaint alleging that the excess revenue was an illegal exaction because the tax was approved for the sole purpose of paying the City's debt to the federal government. Carlock sought to certify a class defined as "[a]ll citizens of Blytheville, Arkansas, during the period of September 1, 2012, through December 1, 2013." The parties filed competing motions for summary judgment. In his motion, Carlock urged the trial court to consider media coverage of the election, along with statements by City officials, in determining whether the City's use of the excess funds constituted an illegal exaction. Following a hearing on the motions, the trial court entered

an order granting summary judgment in favor of the City and dismissing Carlock's complaint. In the order, the trial court recited case law from this court holding that the determination of whether the use of tax revenue for a specific purpose is to be based on the wording of the ballot title. The trial court found that, based on the wording of the ballot title, the City's use of the excess funds to pay payroll taxes was authorized and there was no illegal exaction. This appeal followed.

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *Muccio v. Hunt*, 2016 Ark. 178, 490 S.W.3d 310. A trial court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id.* The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment; the opposing party must demonstrate the existence of a material issue of fact. *Id.* After reviewing the evidence, the trial court should deny summary judgment if, under the evidence, reasonable minds could reach different conclusions from the same undisputed facts. *Id.*

This court has held that any use of sales-tax revenue for purposes other than those designated by the levying ordinance and the ballot is in violation of article 16, § 11 of the Arkansas Constitution and constitutes an illegal exaction. *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998). This court limits review to the enacting ordinance and ballot title because it has long been regarded as axiomatic that the majority of voters, when called upon to vote for or against a proposed measure at a general election, will derive their

3

information about its contents from an inspection of the ballot title immediately before exercising the right of suffrage. *Christian Civic Action Comm. v. McCuen*, 318 Ark. 241, 245, 884 S.W.2d 605, 607 (1994). This, indeed, is the purpose of the ballot title. *Id.*

Carlock recognizes this court's precedent. Despite this, he contends on appeal that in illegal-exaction cases involving a tax enacted through an election, trial courts should be permitted to consider evidence other than the ballot title in determining whether tax revenue is being used for an authorized purpose. To that end, he argues that precedent from this court requiring a trial court to make the decision based on the contents of the ballot title be either reversed or not applied in this case.

We decline Carlock's invitation to break from our longstanding precedent. In *Arkansas-Missouri Power Corp. v. City of Rector*, 214 Ark. 649, 217 S.W.2d 335 (1949), it was argued that the fact that the revenue generated from a tax enacted for the stated purpose of constructing a power plant would be insufficient to cover the entire construction cost did not render the tax an illegal exaction, despite the absence of any indication in the language of the ballot title that additional funds would be necessary, because the need for additional funding had been discussed at city council meetings and a mass meeting the night before the election. In rejecting that argument, this court stated.

> It is to [the ordinance, ballot proposition, and notice of election] that the electors had the right to ascertain what they were asked to approve, and not to discussions in the Council meetings, or to street conversations, or to speeches made at a mass meeting which may or may not have been largely attended.

4

The ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer . . . .

214 Ark. at 654, 217 S.W.2d at 337 (citations omitted). While citizens who voted in the special election at issue in the instant case may or may not have seen press coverage or read statements about the proposed sales and use tax, it is certain that every person who voted was given the opportunity to review the ballot title prior to casting his or her ballot. Because of this, the language of the ballot title should remain the determining factor in deciding what was approved.

Carlock also asserts that the City took inconsistent positions on this issue, pointing to statements by officials he claims indicate that the tax revenue would be applied solely to the tax debt and contrasting those statements with the City's position in this litigation. The doctrine against inconsistent positions prevents an individual from asserting claims that are inconsistent with the individual's previous positions. *Dupwe v. Wallace*, 355 Ark. 521, 531, 140 S.W.3d 464, 470 (2004). The doctrine against inconsistent positions is much broader than judicial estoppel. *Id.* Judicial estoppel prohibits a party from manipulating the courts through inconsistent positions to gain an advantage. *Id.* The doctrine against inconsistent positions may also apply to positions taken outside litigation. *Id.* The doctrine is simply inapplicable here. If the City can be said to have taken an official position prior to this litigation, that position is reflected in the enabling ordinance, the pertinent portion of which is identical to the language of the ballot title.

Carlock does not dispute the plain language of the ordinance and ballot title, which clearly permit the City to use the funds to pay payroll and employment taxes. He also does not contend that the City used the funds for some purpose other than paying payroll and employment taxes. Because the trial court properly utilized the enabling ordinance and ballot title in determining the approved uses for the excess funds, the order dismissing the complaint is affirmed.

Affirmed.

*Law Offices of Harris & Morrison*, by: *James W. Harris* and *Zachary W. Morrison*, for appellant.

*William Clark Mann III*, for appellee.